[No. 7899.]

PEARCE, SECRETARY OF STATE, v. THE PEOPLE EX REL. TATE.

1. CONSTITUTIONAL LAW—*Amendments to the Constitution*, may be proposed at a special session of the legislature.

2. ——*Publication of Amendments*—Under sec. 2, art. XIX of the constitution it is not required, in order to the effectual submission to the people of a proposed amendment to the constitution, that it should appear in the session laws for any certain time, or that such publication should occur previous to the election at which the amendment is to be submitted. The publication for "four successive weeks" prescribed by the constitution relates to the publication required to be made in the newspapers, and not to that in the session laws.

*Error to Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Hon. BENJAMIN GRIFFITH, attorney general, PHILIP W. MOTHERSILL, assistant attorney general, for plaintiff in error.

Mr. MOSES HALLETT, Mr. FRANK E. GOVE, Mr. WILLIAM L. DAYTON, Mr. JACOB FILLIUS, Mr. GEORGE C. MANLY and Mr. EDMUND J. CHURCHILL, *Amici Curiae.*

Mr. N. WALTER DIXON, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court:

At a special session of the general assembly, convened in August, 1910, by proclamation of the governor, there was

proposed as an amendment to our constitution, to be submitted to the people at the general election in November of that year for their approval or rejection, what is generally known as the Initiative and Referendum Law. A constitutional majority of the people approved it. Thereafter a large number of amendments to the constitution, proposed under authority of this new section, were filed in the office of the secretary of state for submission to the people at the general election to be held in November, 1912. The relator, Tate, conceiving that the amendment in question was not a part of our organic law, filed his petition in the district court of the second judicial district, setting forth therein in what its invalidity consisted, and praying for a writ of mandamus to compel the secretary of state to publish and submit, or resubmit, the same to the qualified voters at the next general election, to be held in November, 1912, and to hold for naught and ignore any and all petitions, which have been filed in his office in accordance with its provisions, that contained proposals for constitutional amendments and laws thereunder. The district court granted the prayer of the petition and issued its writ accordingly, to review which this writ of error has been sued out by the secretary of state.

The only defect which the petition points out in connection with the submission of the proposed amendment was the conceded failure upon the part of the secretary of state to cause the same to be published in the session laws of the special legislative session previous to the general election in 1910, at which the vote upon it was taken. Section 2 of article XIX of the constitution, which provides how amendments thereto shall be proposed and submitted, is controlling of the question. That part of the section which is pertinent here reads: " * * * the proposed amendment or amendments shall be published with the laws of that session of the general assembly, and the secretary of state shall also cause the said amendment or amendments to be published in full in not more than one newspaper of general circulation in each county, for four suc-

cessive weeks previous to the next general election for members of the general assembly."

The contention of relator briefly stated is that the publishing of proposed amendments in the session laws for four successive weeks previous to the next general election is an essential condition precedent to the validity of their submission; that they may be proposed only at a regular, and not at a special, session of the general assembly; but, if at a special session, that must be done at such a time as that publication in the session laws can be made as the foregoing language prescribes.

By section 9 of article IV of our constitution "The governor may, on extraordinary occasions convene the general assembly, by proclamation, stating therein the purpose for which it is to assemble." There is no express provision in this section, or elsewhere in the constitution, which prohibits the governor from including in his proclamation convening a special session of the general assembly proposals for amendments to the constitution. It is claimed, however, that the inhibition arises, by implication, from the language above quoted, which requires that proposed amendments be published in the session laws. But it is obvious that if this requirement is mandatory and applicable to insertion in the session laws, the particular objection here urged is untenable, for the general assembly may be convened in special session a sufficient length of time in advance of the general election to permit compliance with publication in the session laws. The objection goes, if at all, only to amendments passed at so late a date that the requirement cannot be met. And so the question really is whether proposed amendments, submitted either at a regular or special session, must be published in the session laws for four successive weeks previous to the general election at which the vote is to be taken.

The language interprets itself. There is no occasion for construction. It is immaterial whether we regard the quoted words as a compound sentence or as two separate sentences.

There is a complete clause or sentence ending with the word "assembly" first employed. It does not say that publication shall be for any specified time, or previous to the next general election. It is only by construing the word "also" as an adverb instead of a conjunction, and as meaning "in like manner," which relator says should be done, that the qualifying clause "for four successive weeks previous to the next general election" can be said to refer to the first, as well as to the second, preceding clause or sentence. "Also" is an adverb. But it is equally true that it is a conjunction, and among its meanings are, as given by Webster, "besides; as well as; further; too." It is in the sense of "besides," or "further," that the word is used here. That being so, it is entirely clear that publication for four weeks previous to the next general election relates only to newspapers and not at all to session laws. This conclusion is fortified by the fact that, according to the ordinary use of language, it would be a strained construction and an unnatural use of words to say that an amendment shall be published in the session laws for four successive weeks. "The session laws" is not a serial publication, or one that is made at a fixed period or at regularly recurring intervals. It is published only once, as a permanent memorial of its designated contents. It has been held that publication of the session laws is a continuous publication. *State ex rel. v. Grey,* 21 Nevada 378. It was so held to save the validity of a constitutional amendment where the publication in the session laws was made sixteen months before an election, whereas the constitutional requirement was that the publication should be for three months before the election. That is not authority, however, for the contention made here that our constitution requires publication in the session laws for four successive weeks previous to the general election. A moment's further consideration will, if possible, make the point clearer: If "also" means "in like manner," it follows that publication in the session laws must, in all respects, be in the same manner as in newspapers. Newspapers are usually daily or weekly

publications, and publication therein is made daily or weekly. Publication in the session laws is made once for all. It is not repeated either daily or weekly, monthly or annually; and so, if the requirement as to time is applicable to both kinds of publication, it would be impossible fully to comply therewith, if the ordinary and primary signification of words is to govern.

An ingenious argument by petitioner's counsel is made that if publication in the session laws need not be made until after the election, it involves an absurdity, since it is only "proposed" amendments that are to be published. And, if so, they may be made only before, not after, the election, because, after election amendments become, if approved, complete or finished documents; if rejected, worthless things; and, in either case, they are no longer "proposed" amendments. The provision means that whatever is proposed as an amendment shall be published in the session laws, and that may be done as well after as before the election.

The majority opinion *In Re House Resolution No. 10*, 50th Colo. 71, is clearly authority for the conclusion which we have reached, that publication of proposed amendments in the session laws need not be made for four successive weeks previous to the next general election. If it had been the intention of the framers of the constitution so to require, it would have been easy to say so in no uncertain terms. It is only by giving to their language an unnatural and forced construction that any such contention can be upheld. It is too plain and conclusive to our minds that the publication for four successive weeks previous to the general election applies only to publication in newspapers to need further argument or citation of cases to support it.

With the wisdom or policy of this amendment this court, of course, has nothing whatever to do. If the cost of submitting amendments that are proposed for submission at the coming election will be grievous and a burden to taxpayers, this court can give no relief. The people have ordained their own constitution and, through their representatives, have made

their laws. It is the duty of the court to enforce them as they are written. If relief should be given, only the people themselves directly, or through their chosen representatives, can, in a proper way, afford it. The judgment of the district court is reversed and the cause remanded, with instructions to dismiss the petition. *Reversed and Remanded.*

Decision *en banc,* all the justices concurring.