In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO THE WORKERS COMP INITIATIVE ADOPTED ON JANUARY 6, 1993.

Carlene Walker, Petitioner,

and

Jack Hawkins and Anita Gail, Respondents,

and

Douglas G. Brown, Raymond T. Slaughter, and Natalie Meyer, Title Setting Board.

No. 93SA19.

Supreme Court of Colorado, En Banc.

April 12, 1993.

whether the proposed amendment would properly appear on the ballot during the November 1993 election or the November 1994 election is premature at this time.

John Berry, Berry & Singer, Geoff Wilson, Tami Tanoue, Susan Griffiths, Griffiths & Tanoue, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Maurice G. Knaizer, Deputy Atty. Gen., General Legal Services Section, Denver, for Title Setting Bd.

Craig C. Eley, Eley & Eley, Denver, for respondent Anita Gail.

Jack Hawkins, pro se.

Justice MULLARKEY delivered the Opinion of the Court.

In this original proceeding brought pursuant to section 1–40–102(3), 1B C.R.S. (1992 Supp.), petitioner Carlene Walker, a registered elector of the State of Colorado, challenges the title, ballot title, submission clause, and summary formulated by the Title Setting Board (Board) for a proposed initiative constitutional amendment. The proposed initiative would amend Article II of the Colorado Constitution, and would permit workers' compensation benefit recipients to choose their own health care providers, and subject the fees charged by such health care providers to state regulation. The text of the proposed initiative and its title, ballot title and submission clause, and summary are appended to this opinion. Walker contends: that the Board did not have jurisdiction to set a title, ballot title, submission clause, and summary for such an initiative for a November 1993 election; that the Board has created an impermissible catch phrase or slogan; and that the fiscal impact statement prepared by the Board insufficiently details the fiscal impact of the initiative. We affirm the ruling of the Board in setting the title, ballot title, submission clause and summary, but conclude that the question of

### I.

■ We first address the question of whether the Board had jurisdiction to set a title, ballot title, submission clause, and summary for the proposed constitutional amendment at issue. Although the petitioner and the respondents argue that article X, section 20 of the state constitution (popularly known as Amendment 1) either does or does not permit this particular initiative to appear on the November 1993 ballot, we conclude that such a determination is premature at this time. The Board has the power and the duty to meet beginning with the first submission of a draft initiative after a general election. § 1–40–101(2). After the titles, submission clause, and summary have been finally fixed, the proponents of an initiative have six months to procure a sufficient number of signatures on a petition. Such a signed petition must be filed with the Secretary of State at least three months prior to the election at which it is to be voted. § 1–40–104, 1B C.R.S. (1992 Supp.). There is, however, no limit as to how early a petition for an initiative can be circulated or filed prior to an election, as long as the process is started after the previous general election. *See Montero v. Meyer*, 795 P.2d 242 (Colo.1990) (petitions filed more than one year before election).

■ The Board does not have any power to set an election date or to place any measure on the ballot. Such power is vested in the Secretary of State alone. §§ 1–5–203 and 1–40–112, 1B C.R.S. (1980 and 1992 Supp.). Because the Board has done nothing more than set a title, ballot title, submission clause, and summary for the proposed amendment, and has not attempted to place the proposed amendment on the November 1993 ballot or any other ballot, we conclude that the question of what types of measures are permitted to appear on odd-year ballots pursuant to article X, section 20 of the state constitution is

not properly before the court at this time. The Board had jurisdiction to set the titles, submission clause and summary for the proposed amendment.

## II.

The registered electors of the State of Colorado have a constitutional right to initiate legislation and constitutional amendments pursuant to article V, section 1(2) of the Colorado Constitution. The Board's authority to designate and fix the title, ballot title, submission clause, and summary for an initiative petition before it is signed is provided in section 1–40–101(1) and (2), 1B C.R.S. (1992 Supp.). The Board has the statutory duty to "consider the public confusion that might be caused by misleading titles" and to "avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." § 1–40–101(2). The title "shall correctly and fairly express the true intent and meaning" of the proposed initiative. *Id.* In addition, "[t]he summary shall be true and impartial and shall not be an argument, nor likely to cause prejudice, either for or against the measure." *Id.* Finally, if, in the opinion of the Board, the proposed law or constitutional amendments will have a fiscal impact on the state or any of its political subdivisions, the summary shall include an estimate of any such fiscal impact, together with an explanation thereof. *Id.*

■ In reviewing the Board's title setting process, the law is settled that this court should not address the merits of the proposed initiative and should not interpret the meaning of proposed language or suggest how it will be applied if adopted by the electorate; we should resolve all legitimate presumptions in favor of the Board; and we will not interfere with the Board's choice of language if the language is not clearly misleading. Our duty is to ensure that the title, ballot title, submission clause, and summary fairly reflect the proposed initiative so that petition signers and voters will not be misled into support for or against a proposition by reason of the words employed by the Board. *In re Proposed Initiated Constitutional Amend-*

*ment Concerning Limited Gaming in the Town of Burlington,* 830 P.2d 1023, 1026 (Colo.1992).

Section 1–40–102(3) authorizes any registered elector who is not satisfied with the action of the Board to file a motion for rehearing with the Secretary of State on the basis that the title, ballot title, submission clause, and summary are "unfair" or "do not clearly express the true meaning and intent of the proposed law or constitutional amendment." If the Board denies the motion for rehearing, the elector is authorized to petition this court for review of the Board's action. *Id.*

Jack Hawkins and Anita Gail have proposed a constitutional amendment which will permit an injured worker to receive as workers' compensation benefits all reasonable and necessary treatment for work-related injuries by health care providers selected by the injured worker. Hawkins and Gail submitted their proposed amendment to the Board, which fixed the title, ballot title, submission clause, and summary. After the Board fixed the title, ballot title, submission clause, and summary, Walker filed a timely motion for rehearing with the Secretary of State. The Board met, received comments from Walker's representative and several others, and voted to retain the title, ballot title, submission clause, and summary originally fixed by the Board. Walker subsequently filed this original proceeding for review of the Board's action.

## III.

Walker argues that the Board has created an impermissible catch phrase or slogan in the summary. Specifically, Walker takes issue with the first sentence of the Board's summary which states: "This measure enacts the 'Workers Choice of Care Amendment.'" Relying on *Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958), Walker argues that the Board, in using the words "Workers Choice of Care Amendment" in the summary improperly used a catch phrase or slogan. The Board asserts that this contention was not properly raised in

the initial hearing of the Board, and therefore was not properly preserved for review.

### A.

Prior to commencing discussions on the fiscal impact statement, the Secretary of State asked if anyone had any comments on the summary. No one responded, and the Board voted unanimously to adopt the summary as prepared by the staff. The first time that anyone objected to the wording of the summary was in Walker's motion for rehearing. At the hearing following the motion for rehearing, the "catch phrase" issue was not argued by the petitioner, although it was mentioned by one member of the Board, who simply referred to this court's decision in *In re Proposed Initiative on Surface Mining*, 797 P.2d 1275 (Colo.1990).

The statutes governing the Board permit "[a]ny registered elector" (other than the proponents of the initiative at issue) to challenge the titles, summary, or submission clause by filing a "motion for rehearing" within fifteen days after the titles, summary and submission clause have been set. § 1–40–102(3)(a), 1B C.R.S. (1992 Supp.).[1] The Board must decide the petition for rehearing within forty-eight hours. If the petition is overruled, the registered elector may seek review in this court. *Id.* Nothing in the statutes requires the registered elector to participate in the hearing at which the titles, summary and submission clause are fixed. Nor is the registered elector required to appear and argue the merits of the petition for rehearing. Walker complied with the statutory requirements and we will address the merits of her objection.

### B.

■ We conclude that the *Say* analysis does not require us to set aside the Board's summary. In *Say*, the objectors claimed that the title drafted by the Board was unfair because it did not state that the proposed initiative would guarantee "Freedom to Work." *Say*, 137 Colo. at 157, 322 P.2d at 318. The Board's title paraphrased or in part exactly repeated the language of the proposed initiative. The "Freedom to Work" language sought by the *Say* objectors did not appear verbatim in the text of the proposed initiative. *Id.* In the case now before us, the Board also has drafted a summary which mirrors the language of the proposed initiative. The phrase "Workers Choice of Care" is taken directly from the proposed amendment.

In *Say* we noted that our job is not to write the best possible ballot title but simply to eliminate a title which is insufficient or unfair. *Id.* at 160, 322 P.2d at 319 (quoting *Wieder v. Hoss*, 143 Or. 122, 21 P.2d 780 (1933)). In stressing that the Board wisely avoided use of a catch phrase which could become a political slogan, the *Say* court apparently referred to the then-current controversy surrounding "right to work" legislation. *See* 1 Charles J. Morris, *The Developing Labor Law* 49–51 (2d ed. 1983) ("Right to work" legislation proposed in many states in the late 1950s was a partisan reaction to disclosures regarding union officials' abuses disclosed in hearings held by the Senate Committee on Improper Activities in Labor–Management Relations, chaired by Senator McClellan of Arkansas). Evaluation of a claim that particular language is an improper catch phrase or slogan must be made in the context of contemporary public debate. *Cf. In re Proposed Initiative on Parental Notification of Abortions for Minors*, 794 P.2d 238, 242 (Colo.1990) (holding that a change in the definition of "abortion," implicating "one of the central issues in the abortion debate," was required to be reflected in the titles to fully inform petition signers and voters). There is no showing in the present case that "Workers Choice of Care" is a well-known, arguably inflammatory phrase comparable to "Freedom to Work," the phrase at issue in *Say*.

The case before us is more like *Surface Mining*, 797 P.2d 1275. There, the objec-

---

**1.** *See* § 1–40–101(3), 1B C.R.S. (1980), for a proponent's right to object to the titles, summary, or submission clause.

tors challenged language in the titles, summary and submission clause that stated that the proposed initiative would prohibit surface mining which "may scar the land." We held the title was fair and accurate because it repeated the operative language of the proposed amendment. *Id.* at 1281. Here too we conclude that the summary language is fair and accurate and we uphold the summary drafted by the Board.

## IV.

The Board's statement of the proposed fiscal impact on the state and its political subdivisions was that an increase in workers' compensation benefits was expected, but the amount of the increase was uncertain. Walker argues that this statement of the proposed measure's fiscal impact on the state or its political subdivisions is insufficient. We disagree.

The Board, pursuant to statute, requested the Office of State Planning and Budgeting (OSPB) and the Department of Local Affairs (DLA) to assist it in preparing the fiscal impact statement. The OSPB reported that, based on data collected from public, private and commercial insurance carriers, the increase in total workers' compensation benefit cost could range from 2.5 percent to 30 percent. The OSPB also reported that Jack Hawkins, one of the proponents of the measure, had stated that the AFL–CIO was in possession of data that could demonstrate that the measure could reduce benefit costs. The DLA relied on two studies which also showed that the proposed measure could increase costs 30%. The DLA's estimate, however, consisted of an estimate of how many more employees would choose their own health care providers, multiplied that number by an estimate of the total premiums for workers' compensation insurance for government employees, and multiplied that estimate of affected premiums by the 30 percent estimate of benefit increases to obtain an estimate of increased costs. The DLA noted that its estimate was a "best guess," and it acknowledged that "[t]he many assumptions above are made on data which is difficult to obtain or does not exist."

At the hearing, several witnesses testified that the fiscal impact statement should use the numbers used by the OSPB and the DLA, or similar ones. Hawkins, on the other hand, pointed to a 1986 study which showed that employee choice of health care providers can reduce cost and lost work time. "While a separate explanation of the fiscal impact is preferred, a definitive fiscal impact is not required where, due to the variables or uncertainties inherent in the particular issue, the fiscal impact cannot reasonably be determined from the materials submitted to the Board." *In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Environment,* 830 P.2d 1031, 1035 (Colo. 1992). Here, the two agencies from which the Board solicited estimates of fiscal impact stated that the costs to state and local government entities would increase, but that the precise magnitude was uncertain. In light of these facts, the Board's statement of fiscal impact is appropriate.

## V.

In summary, we conclude that the Board had jurisdiction to designate and fix a title, ballot title, submission clause, and summary, and that the question of when the measure would appear on the ballot is premature; that the Board did not use a "catch phrase" or slogan in the summary; and that the fiscal impact statement was sufficient. Accordingly, we affirm the ruling of the Board.

## APPENDIX

The text of the proposed initiative is as follows:

Be it enacted by the People of the State of Colorado: Article II of the Constitution is amended by the addition of a new section to read:

(1) This amendment shall be known as the Workers choice of Care Amendment.

(2) Benefits to an injured worker under the Workers' Compensation Act shall include all reasonable and necessary treatment for work related injuries by health care providers selected by the in-

jured worker. The fees charged by such health care providers shall be subject to regulation by the State of Colorado.

(3) This amendment's effective date shall be the date of adoption by the voters of Colorado.

The title prepared by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION TO SPECIFY THAT WORKERS' COMPENSATION BENEFITS INCLUDE ALL REASONABLE AND NECESSARY TREATMENT, TO ALLOW INJURED WORKERS TO CHOOSE HEALTH CARE PROVIDERS, AND TO SUBJECT PROVIDER FEES TO STATE REGULATION.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO SPECIFY THAT WORKERS' COMPENSATION BENEFITS INCLUDE ALL REASONABLE AND NECESSARY TREATMENT, TO ALLOW INJURED WORKERS TO CHOOSE HEALTH CARE PROVIDERS, AND TO SUBJECT PROVIDER FEES TO STATE REGULATION?

The summary prepared by the Board is as follows:

This measure enacts the "Workers Choice of Care Amendment". It specifies that benefits for injured workers under the "Workers' Compensation Act of Colorado" include all reasonable and necessary treatment by health care providers for work-related injuries and permits such health care providers to be selected by the injured worker. It subjects fees charged by health care providers under the workers' compensation system to state regulation.

Officials of state government believe that allowing injured workers to choose their health care providers will cause an increase in benefits paid, although the amount of the increase is uncertain. Any such increase would have to be funded by increases in workers' compensation insurance premiums and by whatever means may be chosen by self-insured employers.