In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE AND SUMMARY APPROVED APRIL 6, 1994, AND APRIL 20, 1994, FOR THE PROPOSED INITIATIVE CONCERNING "AUTOMOBILE INSURANCE COVERAGE."

David V.S. Knowles and Buford F. Rice, Petitioners,

and

Bob Pastore and Paul Weissmann, Respondents,

and

Title Setting Board: Steve Erkenbrack, Rebecca Lennahan, and Natalie Meyer, Respondents.

No. 94SA165.

Supreme Court of Colorado, En Banc.

July 5, 1994.

Byrne Ruh & McDermott P.C., Mark W. Williams, Denver, for petitioners.

Cecil L. Turner, Pueblo, for respondents Bob Pastore and Paul Weissmann.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Denver, for respondent Title Setting Bd.

Justice KIRSHBAUM delivered the Opinion of the Court.

Petitioners David V.S. Knowles and Buford F. Rice, registered electors for the State of Colorado, challenge the ruling of the Initiative Title Setting Board (the Board) in approving the title, ballot title and submission clause, and summary for a proposed initiated amendment to the Colorado Constitution relating to automobile insurance. We affirm the ruling of the Board.

The proposed constitutional amendment would require the General Assembly to establish a system of automobile insurance requiring drivers to elect to purchase private insurance or to participate in an insurance pool of drivers with no insurance. The system would be financed by "premiums" imposed on fuel, license plates, drivers licenses, and traffic offense convictions and collected by means of the existing revenue collection systems for financing the construction and maintenance of streets and highways. The proposed amendment requires the General Assembly to enact enabling legislation providing that privately insured drivers will be distinguished from uninsured drivers at collection points where premiums will be collected or, alternatively, that privately insured

drivers will receive credits against their purchases of private insurance based on amounts they pay at those collection points. The proposal also provides that, as of January 1, 1995, driving an automobile without automobile insurance would not be a criminal offense. The text of the proposed amendment is attached hereto as Appendix A. The text of the title, ballot title and submission clause, and summary as prepared by the Board are attached hereto as Appendix B.

## I

The respondents, State Senators Bob Pastore and Paul Weissmann, the proponents of the proposed amendment, submitted an original typewritten draft thereof to the Legislative Council and the Office of Legislative Legal Services, pursuant to section 1–40–105(1), 1B C.R.S. (1993 Supp.). After comments were received, a public hearing on the comments was held, pursuant to section 1–40–105(1). The respondents then submitted the measure to the secretary of state on March 18, 1994. On April 6, 1994, the Board convened a hearing pursuant to section 1–40–106(1), 1B C.R.S. (1993 Supp.), and set a title, a ballot title and submission clause, and a summary for the proposed amendment. On April 12, 1994, pursuant to section 1–40–107(1), 1B C.R.S. (1993 Supp.), the petitioners filed identical motions for rehearing, which motions were denied on April 20, 1994. Pursuant to section 1–40–107(2), 1B C.R.S. (1993 Supp.), the petitioners then filed this challenge to the Board's actions.

## II

The petitioners argue that the title, ballot title and submission clause, and summary prepared by the Board are misleading and fail to fully and fairly express the intent of the proposed amendment because the documents erroneously describe the proposed funding mechanism as a proposal to collect "premiums" rather than a proposal to collect new taxes. They assert that the proposal contravenes the provisions of article X, section 20(3)(c), of the Colorado Constitution by failing to state that it will result in the imposition of taxes. The petitioners further contend that the documents prepared by the Board fail to disclose that the proposed insurance pool will be publicly funded; are ambiguous in stating that privately insured drivers may be "separated" at "collection points" from those who are insured through the pool; are misleading in referring to "uninsured" drivers when under the proposed amendment all drivers will be insured, either by private insurance or by the pool; and are neither brief nor clear. We address each of these arguments in the order presented by the petitioners.

## III

Article V, section 1, of the Colorado Constitution reserves the right to initiate constitutional amendments to the registered electors of the state. The Board, in order to aid the electors in the exercise of this right, has the duty to designate and fix a title, a ballot title and submission clause, and a summary for initiated petitions before they are signed by electors. *In re Proposed Tobacco Tax,* 830 P.2d 984, 988 (Colo.1992). *See also Brownlow v. Wunsch,* 103 Colo. 120, 131, 83 P.2d 775, 780 (1938). "The purpose of the title setting process is to ensure that both persons reviewing an initiative petition and the voters are fairly and succinctly advised of the import of the proposed law." *In re Initiative on Education Tax Refund,* 823 P.2d 1353, 1355 (Colo.1991).

In performing its statutory duty, the Board is not required to describe every feature of a proposed initiative. *In re Limited Gaming in the City of Antonito (Limited Gaming IV),* 873 P.2d 733, 739 (Colo.1994); *In re Initiated Constitutional Amendment Concerning Limited Gaming in Burlington,* 830 P.2d 1023, 1026 (Colo.1992). Instead, the Board need only reference the essential features of a proposed initiative in preparing titles and ballot titles and submission clauses. *In re Proposed Initiative on School Pilot Program,* 874 P.2d 1066, 1071 (Colo.1994). The Board must "avoid titles for which the general understanding of a 'yes' or 'no' vote will be unclear." § 1–40–106(3)(b), 1B C.R.S. (1993 Supp.). The title must correctly and fairly express the true intent and meaning of the proposed measure, and the submis-

sion clause set by the Board should briefly, but unambiguously, state the principle of the provision sought to be added, amended, or repealed. *Id.* The Board also has a duty to prepare a clear, concise summary of the proposed law or constitutional amendment which is true and impartial, and is not an argument, nor likely to create prejudice, either for or against a proposed initiative. § 1–40–106(3)(a), 1B C.R.S. (1993 Supp.); *In re Proposed Initiative on School Pilot Program,* 874 P.2d at 1071–72; *In re Initiative under the Designation "Tax Reform",* 797 P.2d 1283, 1288 (Colo.1990).

In cases requiring our review of titles set by the Board, all legitimate presumptions are indulged in favor of the propriety of the Board's actions and a title will be declared invalid only in a clear case. *Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). We do not address the merits of proposed initiatives, interpret the meaning of language contained in such proposals, or suggest how initiatives will be applied if ultimately adopted by the electorate. *In re Constitutional Amendment Concerning the "Fair Treatment of Injured Workers Amendment",* 873 P.2d 718, 719–20 (Colo. 1994); *In re Proposed Election Reform Amendment,* 852 P.2d 28, 31–32 (Colo.1993). We will not interfere with the Board's choice of language if the words selected clearly and concisely reflect the central features of the proposal and will reject language only if it is inaccurate or misleading with respect to the meaning and intent of the initiative. *Limited Gaming IV,* 873 P.2d at 721–22.

## IV

## A

The petitioners first argue that the title and the ballot title and submission clause are misleading because they refer to "premiums" rather than "taxes," and that the use of the word "premiums" rather than "taxes" in the title and the ballot title and submission clause creates a prejudice in favor of the amendment.

It is beyond the jurisdiction of the Board, and beyond the scope of our review of the Board's actions, to interpret or construe the language of a proposed initiative. *In re Proposed Initiative on School Pilot Program,* 874 P.2d 1066, 1070–71 (Colo.1994). We consider only whether the language adopted by the Board clearly reflects the true intent and meaning of the proponents of an initiative. *In re Proposed Initiative on School Pilot Program,* 874 P.2d at 1069. *See also* § 1–40–106(3)(b), 1B C.R.S. (1993 Supp.). The petitioners contend that the funds raised through the existing system of revenue collection for building and maintaining roadways are "taxes," and thus the Board erred both in failing to state that fact in the documents it prepared and in failing to set the ballot title in the manner prescribed by article X, section 20(3)(c), which requires ballot titles for tax or bonded debt increases to begin: " 'SHALL (DISTRICT) TAXES BE INCREASED (first, or if phased in, final, full fiscal year dollar increase) ANNUALLY ...?' or 'SHALL (DISTRICT) DEBT BE INCREASED (principal amount), WITH A REPAYMENT COST OF (maximum total district cost), ...?' " The Board contends that the funds are "fees." The proposed amendment refers to these funds as "premiums" to be collected through existing collection systems.

Neither the Board nor this court can choose between the varying possible interpretations of the status of revenues ultimately collected. *See In re Proposed Initiative on School Pilot Program,* 874 P.2d at 1072. The petitioner in effect would require the Board and, in this proceeding, this court, to make such an interpretation. In the event the proposal is adopted by the electorate, the question of whether any funds collected under implementing legislation ultimately enacted by the General Assembly are in effect "taxes" may be determined in appropriate judicial proceedings.

The petitioners also contend that the documents prepared by the Board do not indicate that the proposed insurance pool will be funded by state revenues. The language of the proposed amendment does not state that the insurance program will be funded by state revenues. The proposal does provide that the program will be funded from premiums collected from motorists without private

insurance through their purchases of fuel, drivers licenses and license plates, and from "premiums/surcharges" on traffic offense convictions. Adoption of the petitioners' view that the insurance pool must be described as "public" or "publicly funded" would require this court to conclude that the Board improperly exercised its discretion in describing the measure. This is not the test. *See In re Proposed Initiative on School Pilot Program*, 874 P.2d at 1070. The language used by the Board properly repeats the operative language of the proposed amendment itself and expresses the true intent and meaning of the measure. *See In re Workers Comp Initiative*, 850 P.2d 144, 147–48 (Colo. 1993).

### B

■ The petitioners argue that the documents prepared by the Board are ambiguous in that they fail to define the terms "separated" and "collection points." These terms appear in the proposal. While they may be broad and perhaps capable of more precise definition, more particular definitions of these terms will no doubt depend upon the language of any implementing legislation adopted by the General Assembly. *See In re Limited Gaming in the City of Antonito (Limited Gaming IV)*, 873 P.2d 733, 741 (Colo.1994); *In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Environment*, 830 P.2d 1031, 1034 (Colo.1992). The proposed amendment does not contain specific provisions establishing a particular automobile insurance pool system. It requires the General Assembly to create such a system. In our view, the language adopted by the Board to describe the proposal is clear and unambiguous.

### C

■ The petitioners contend that the title and the ballot title and submission clause are misleading because they suggest that the proposed insurance pool system will be funded by premiums collected from uninsured drivers in spite of the fact that under the proposed system no driver would be uninsured. The petitioners argue that the title and the ballot title and submission clause

should refer to the collection of taxes from drivers who do not have private insurance.

While the petitioners' overall perspective may be justified, we do not agree that the title and the ballot title and submission clause are misleading. The Board has adopted the language of the proposed amendment in drafting the challenged documents. We have recognized that repetition of operative language of an initiative in the title setting process does not necessarily satisfy the requirement that the title and the ballot title and submission clause clearly reflect the intent of the initiative. *In re Proposed Initiative on "Obscenity"*, 877 P.2d 848, 850 (Colo.1994). *See also In re Proposed Initiative on "Governmental Business"*, 875 P.2d 871, 875–77 (Colo.1994). However, appropriate use of the language of a proposal may reflect the intent thereof. *See In re Workers Comp Initiative*, 850 P.2d 144, 147–48 (Colo.1993); *In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Environment*, 830 P.2d 1031, 1034 (Colo.1992). In this case, the documents prepared by the Board appropriately distinguish between drivers who purchase private insurance and those who do not and therefore will be covered by the insurance pool. The documents are not misleading.

### D

■ The petitioners also contend that the title and the ballot title and submission clause are impermissibly lengthy and that the summary is not clear and concise. In preparing the critical documents, especially the title and the ballot title and submission clause, the Board must navigate the straits between brevity and unambiguously stating the central features of the provision sought to be added, amended, or repealed. *In re Election Reform Amendment*, 852 P.2d 28, 32 (Colo.1993). In reviewing the Board's performance of this often difficult task, we do not require the Board to meet a standard of perfection; instead, we seek "simply to eliminate a title which is insufficient or unfair." *Id.* at 35. We have previously indicated our conclusion that the language of the documents adopted by the Board fairly reflects

the intent and central contents of the proposed amendment. The proposed amendment contains several important features. We find the language adopted by the Board to be sufficiently concise and to convey appropriately the central features of the proposal to. the electorate.

V

For the foregoing reasons, we affirm the ruling of the Board.

### APPENDIX A

### "THE F.A.I.R. AMENDMENT

### FAIRNESS IN AUTOMOBILE INSURANCE RATES

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO ARTICLE 2 SECTION 31 OF THE COLORADO CONSTITUTION.

AFTER THE EFFECTIVE DATE OF THIS SECTION THE LEGISLATURE SHALL CREATE A COMPREHENSIVE AUTOMOBILE INSURANCE SYSTEM TO ALLOW DRIVERS OF AUTOMOBILE THE PREROGATIVE OF PURCHASING PRIVATE AUTO INSURANCE COVERAGE OR NOT PURCHASING PRIVATE COVERAGE AND THEREFORE PARTICIPATING IN AN INSURANCE POOL FOR ALL DRIVERS WITHOUT PRIVATE INSURANCE.

PURSUANT TO THIS SECTION THE LEGISLATURE IN ORDER TO CREATE A COMPREHENSIVE AUTOMOBILE INSURANCE POOL FOR DRIVERS WITHOUT PRIVATE COVERAGE MAY USE THE EXISTING REVENUE COLLECTION SYSTEMS BY WHICH STREETS AND HIGHWAYS ARE BUILT, MAINTAINED AND ADMINISTERED TO COLLECT PREMIUMS FOR ALL DRIVERS NOT COVERED BY PRIVATE INSURANCE AS WELL AS PREMIUM/SURCHARGES ON TRAFFIC OFFENSES. PREMIUMS MAY BE THEREFOR COLLECTED ON FUEL, LICENSE PLATES, DRIVERS' LICENSES, AND ANY TYPE OF TRAFFIC OFFENSE CONVICTIONS. PRIVATELY INSURED DRIVERS MAY BE SEPARATED FROM THOSE WHO BECOME INSURED BY THE POOL UPON PAYMENT OF PREMIUMS AT THE COLLECTION POINTS. THERE MAY, ALTERNATIVELY, BE A SYSTEM ESTABLISHED TO ALLOW PROPER CREDIT AS AGAINST PURCHASE OF PRIVATE AUTOMOBILE INSURANCE USING A FAIR AND ACCURATE VOUCHER SYSTEM GIVING SUBSTANTIALLY ACCURATE CREDIT FOR AMOUNTS ACTUALLY PAID AT THESE COLLECTION POINTS IF PRIVATELY INSURED DRIVERS ARE NOT SEPARATED AT THE COLLECTION POINTS FROM THOSE DRIVERS WITHOUT PRIVATE AUTOMOBILE INSURANCE FROM AND AFTER JANUARY 1, 1995 THE ACT OF DRIVING AN AUTOMOBILE WITHOUT INSURANCE SHALL NOT BE A CRIMINAL OFFENSE.

### APPENDIX B

A Proposed Initiative on "Automobile Insurance Coverage"

AN AMENDMENT TO THE COLORADO CONSTITUTION TO REQUIRE THE GENERAL ASSEMBLY TO CREATE AN AUTOMOBILE INSURANCE SYSTEM WHEREBY DRIVERS MUST EITHER PURCHASE PRIVATE AUTOMOBILE INSURANCE OR PARTICIPATE IN AN INSURANCE POOL CONSISTING OF DRIVERS WHO HAVE NO PRIVATE AUTOMOBILE INSURANCE; TO AUTHORIZE THE USE OF EXISTING REVENUE COLLECTION SYSTEMS BY WHICH ROADS ARE BUILT AND MAINTAINED TO COLLECT PREMIUMS FROM UNINSURED DRIVERS; TO AUTHORIZE THE COLLECTION OF PREMIUMS ON FUEL, LICENSE PLATES, DRIVERS' LICENSES, AND ANY TYPE OF TRAFFIC OFFENSE CONVICTION FOR THE PURPOSE OF FUNDING THE COST OF PROVIDING AUTOMOBILE INSURANCE FOR THE UNINSURED; TO PROVIDE THAT PRIVATELY INSURED DRIVERS MAY BE SEPARATED FROM DRIVERS WHO ARE INSURED THROUGH THE INSURANCE POOL AT

COLLECTION POINTS, OR, IN THE AL-TERNATIVE, THAT INSURED DRIVERS MAY RECEIVE A CREDIT AGAINST THEIR PURCHASE OF PRIVATE AUTO-MOBILE INSURANCE BASED ON AMOUNTS THEY HAVE ACTUALLY PAID AT COLLECTION POINTS; AND TO PROVIDE THAT, AS OF JANUARY 1, 1995, IT IS NOT A CRIMINAL OFFENSE TO DRIVE AN AUTOMOBILE WITHOUT AUTOMOBILE INSURANCE.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO REQUIRE THE GENERAL ASSEMBLY TO CREATE AN AUTOMOBILE INSUR-ANCE SYSTEM WHEREBY DRIVERS MUST EITHER PURCHASE PRIVATE AUTOMOBILE INSURANCE OR PAR-TICIPATE IN AN INSURANCE POOL CONSISTING OF DRIVERS WHO HAVE NO PRIVATE AUTOMOBILE INSUR-ANCE; TO AUTHORIZE THE USE OF EXISTING REVENUE COLLECTION SYSTEMS BY WHICH ROADS ARE BUILT AND MAINTAINED TO COL-LECT PREMIUMS FROM UNINSURED DRIVERS; TO AUTHORIZE THE COL-LECTION OF PREMIUMS ON FUEL, LI-CENSE PLATES, DRIVERS' LICENSES, AND ANY TYPE OF TRAFFIC OFFENSE CONVICTION FOR THE PURPOSE OF FUNDING THE COST OF PROVIDING AUTOMOBILE INSURANCE FOR THE UNINSURED; TO PROVIDE THAT PRI-VATELY INSURED DRIVERS MAY BE SEPARATED FROM DRIVERS WHO ARE INSURED THROUGH THE INSUR-ANCE POOL AT COLLECTION POINTS, OR, IN THE ALTERNATIVE, THAT IN-SURED DRIVERS MAY RECEIVE A CREDIT AGAINST THEIR PURCHASE OF PRIVATE AUTOMOBILE INSUR-ANCE BASED ON AMOUNTS THEY HAVE ACTUALLY PAID AT COLLEC-TION POINTS; AND TO PROVIDE THAT, AS OF JANUARY 1, 1995, IT IS NOT A CRIMINAL OFFENSE TO DRIVE

AN AUTOMOBILE WITHOUT AUTOMO-BILE INSURANCE?

The summary as prepared by the board [sic] is as follows:

The measure requires the state to create an automobile insurance system whereby drivers can elect to purchase private automobile insurance or participate in an insurance pool consisting of drivers who have no automobile insurance. It requires that all drivers in Colorado either purchase private automobile insurance or participate in the insurance pool.

The measure authorizes the use of existing revenue collection systems by which roads are built and maintained to collect premiums from all uninsured drivers and to collect surcharges on all traffic offenses. The measure authorizes the collection of premiums on fuel, license plates, drivers' licenses, and traffic offense convictions for the purpose of funding the cost of providing automobile insurance for the uninsured.

The measure states that privately insured drivers may be separated from drivers who are insured through the insurance pool for purposes of collecting premiums at the collection points. In the alternative, the measure provides that insured drivers may receive a credit against their purchase of private automobile insurance based on amounts they have actually paid at the collection points.

The measure provides that, as of January 1, 1995, it is not a criminal offense to drive an automobile without automobile insurance.

This measure could have a substantial fiscal impact on state government. Although the measure does not specify the type of system that will implement the motor vehicle insurance program, the fiscal analysis of a similar bill during the 1994 legislative session projected administrative costs of approximately $3,000,000 in fiscal year 1996/1997 and approximately $7,000,000 in fiscal year 1997/1998. The state way lose additional revenue when fines are no longer imposed on uninsured drivers. There could be an additional negative impact on the state general fund from reduced revenues from the insurance premium tax if a significant number of individuals currently carrying private auto-

mobile insurance elect to be covered under the insurance pool and the premium tax is not assessed against amounts in such pool.

The measure could have an indeterminate fiscal impact on local government from the administrative expense of collecting assessments for the motor vehicle insurance program at the time of vehicle registration and annual renewal.

4/20/94 Rehearing

Adjourned 3:54 p.m.