Cletus E. BYRNE, Jr. and Sherman
S. Saeger, Petitioners,

v.

TITLE BOARD and the Colorado
Secretary of State,
Respondents.

No. 95SA176.

Supreme Court of Colorado,
En Banc.

Nov. 28, 1995.

As Modified on Denial of Rehearing
Dec. 18, 1995.

---

Susan E. Burch, Denver, for Petitioners.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaiser, Deputy Attorney General, General Legal Services Section, Denver, for Title Board.

Justice SCOTT delivered the Opinion of the Court.

Petitioners and registered electors Cletus E. Byrne, Jr. and Sherman S. Saeger bring this original proceeding for review of the action taken by the Initiative Title Setting Board (the "Title Board" or "respondents"). The petitioners were dissatisfied with the title, submission clause, and summary provided by the Title Board on an initiative petition considered at its last meeting in May, 1995. Petitioners question the Title Board's authority to set a hearing on their motion more than forty-eight hours after it was filed. Because section 1–40–107(1), 1B C.R.S. (1995 Supp.), expressly requires that such a motion must be acted upon within forty-eight hours, we hold that the Title Board erred.

I

On May 17, 1995, the Title Board was convened by the Secretary of State to designate and fix a proper title, ballot title and submission clause, and summary relating to an initiative proposing an amendment to article X of the Colorado Constitution (Amend Tabor No. 25).[1] During its meeting, the Title Board approved a title, ballot title and submission clause, and a summary (collectively referred to as "title and summary"). Not satisfied with the title and summary, on May 24, 1995, petitioners filed a motion for rehearing pursuant to section 1–40–107(1),

1B C.R.S. (1995 Supp.), requesting that the Title Board reconsider the title and summary.

The Title Board determined it would consider petitioner's motion on Wednesday, June 7, 1995, two weeks later at its next scheduled meeting. When informed of the Title Board's actions, petitioners filed their petition for mandamus and other relief with this court to challenge the Title Board's act of setting a hearing more than forty-eight hours after the motion was filed. Petitioners claim the Title Board's act of setting a hearing on petitioner's motion two weeks later is contrary to section 1–40–107(1), which requires that motions for rehearing regarding matters determined at the Title Board's last meeting in May "shall be heard within forty-eight hours after the motion is filed." § 1–40–107(1), 1B C.R.S. (1995 Supp.).

II

■ As a threshold question, we first address the issue of whether this matter is moot because the Title Board did conduct a hearing on petitioners' motion prior to review by this court, on June 7, 1995.

Although the rehearing requested by the petitioners has already occurred, the matter in this case, like so many election cases, falls within the exception to the mootness doctrine which allows review of matters "capable of repetition yet evading review." *Urevich v. Woodard,* 667 P.2d 760, 762 (Colo.1983) (citing *American Party v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); and *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)). If petitioners were denied a decision in this case because the Title Board acted, though untimely, prior to our decision, there is no reason to believe that in the future under similar circumstances that they or some other elector will be able to obtain review before the Title Board acts the next time the.Title Board determines it need not

---

1. In a related case, *In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25,* 900 P.2d 121 (Colo.1995), we reversed the action of the Title Board and remanded that matter with directions that the Title

Board set aside the title, ballot title and submission clause, and summary because the initiative did not comply with the single subject requirement of article V, section 1(5.5) of the Colorado Constitution.

consider a motion for rehearing within 48 hours of its last meeting in May. Each May, an elector might be placed in the same position as petitioners, without a review of the Title Board's action. We therefore hold that this matter, which examines agency action capable of repetition yet evading review, is not moot.

## III

### A

The General Assembly has determined that statewide ballot issue elections, which were previously held only in even-numbered years, § 1–1–104(17), 1B C.R.S. (1995 Supp.), may also be held on the first Tuesday of November of each odd-numbered year. § 1–41–102, 1B C.R.S. (1995 Supp.). For ballot issues during both even-numbered and odd-numbered years, the Secretary of State convenes a Title Board consisting of the Secretary of State, the Attorney General, and the Director of the Office of Legislative Legal Services or their designees. § 1–40–106, 1B C.R.S. (1995 Supp.); *In re Title, Ballot Title and Submission Clause, and Summary regarding Amend Tabor 25,* 900 P.2d 121, 124 (Colo.1995). By majority vote, the Title Board designates the title and summary for ballot issues. § 1–40–106. However, in order for an initiative issue to appear on the statewide ballot, a petition must be filed with the Secretary of State within six months from the date the Title Board fixes the title and summary. § 1–40–108, 1B C.R.S. (1995 Supp.).

The Title Board meets to set the title and summary and to act on matters that may appear on an election ballot as specified in section 1–40–106(1), 1B C.R.S. (1995 Supp.):

> The title board, by majority vote, shall proceed to designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause, at public meetings to be held at 2 p.m. on the first and third Wednesdays of each month in which a draft or a motion

for reconsideration has been submitted to the secretary of state.... The first meeting of the title board shall be held no sooner than the first Wednesday in December after an election, and *the last meeting shall be held no later than the third Wednesday in May in the year in which the measure is to be voted on.*

(Emphasis added.) The Title Board conducts its meetings to set ballot titles and summaries beginning no sooner than the first Wednesday in December. § 1–40–106(1). The last meeting of the Title Board must be held no later than the third Wednesday in the following May for initiative measures placed on the ballot that same year. *Id.*

 Any dissatisfied registered elector may challenge the Title Board's decision setting a title and summary by filing a motion for rehearing within seven days of the Board's action. § 1–40–107(1). Section 1–40–107(1) further provides:

> *The motion for the rehearing shall be heard at the next regularly scheduled meeting* of the title board; except that, if the title board is unable to complete action on all matters scheduled for that day, consideration of any motion for rehearing may be continued to the next available day, and *except that, if the titles and summary protested were set at the last meeting in May, the motion shall be heard within forty-eight hours after the motion is filed.*

(Emphasis added.) Thus, if a motion for rehearing is properly filed, the Title Board must set the matter for a timely rehearing either at its "next regularly scheduled meeting," or "within forty-eight hours after the motion is filed." *Id.* In accordance with section 1–40–107(1), if the titles and summary were set at the last meeting in May, the motion for rehearing must be heard within forty-eight hours.[2]

### B

 According to petitioners, the Secretary of State could not determine eligibility

---

**2.** It is important to note our charge in interpreting § 1–40–107. The first goal of the court in construing a statute is to ascertain and give effect to the General Assembly's intent; to ascertain the legislative intent, courts must first look to the

statutory language in question. *Colorado Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992). Where statutory language is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction.

for the general election ballot for November 1995, an odd-numbered election year, before the title and summary had been set and petition signatures secured; therefore, the Title Board had to treat the initiative proposal as one eligible for the 1995 general election ballot. The respondents argue that because the Secretary of State had not made a final determination of eligibility of the proposed measure for the 1995 general election ballot, and because the secretary's vote as a member of the Title Board may be accepted as a preliminary but not final determination as to eligibility, the Title Board properly deemed the subject initiative ineligible for the 1995 ballot. Thus, respondents conclude, the Title Board's Wednesday May 17, 1995, meeting may not have been "the last meeting ... in the year in which the measure [was] to be voted on" and, hence, it was not necessary to hear petitioners' motion for rehearing within forty-eight hours of its filing. We disagree with the respondents and reject the rationale of their argument.

In *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Proposed Election Reform Amendment*, 852 P.2d 28 (Colo.1993) (*Election Reform Amendment*), and *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Workers Comp Initiative*, 850 P.2d 144 (Colo.1993) (*Workers' Comp Initiative*),[3] we examined the Title Board's authority to set a title and summary. We held that the Title Board's jurisdiction did not include "an election date or [the authority] to place any measure on the ballot," *Workers' Comp Initiative*, 850 P.2d at 145, further, "such a determination is premature" for contemplation while the title and summary are under consideration. *Id.; Election Reform Amendment*, 852 P.2d at 33. Respondents concede that when the Title Board set the rehearing date for June 7, 1995, as opposed to a time within the statutorily prescribed forty-eight hour period, it assumed the initiative measure was not eligible for placement on the

November 1995 statewide ballot. The respondents further concede that the Secretary of State did not make a final determination that the initiative measure was not eligible for the November 1995 statewide ballot. In fact, respondents state in their response to our rule to show cause that

> [t]he Secretary has not yet made a final determination about the election at which the measure will be held. This decision will not be made until after the title has been set. Because the decision has not been made by the Secretary, the issue is not ripe for review by this Court.

Answer to Rule to Show Cause at 9.

Respondents contend that when the Secretary of State casts her vote as a member of the Title Board, she acts not only as a member of the Title Board, but also in her official capacity as Secretary of State. Respondents also assert that because such action is preliminary but not final, it is action free from judicial review. Respondents' position, while perhaps practical, is fraught with the potential for unintended consequences. By statute, the Title Board acts by majority vote, not the singular vote of the Secretary of State or any other member. *See* § 1–40–106(1), 1B C.R.S. (1995 Supp.). At times, therefore, the Board's actions may not be coterminous with the vote or views of the Secretary of State. For example, if the Secretary of State casts a minority vote opposing the vote of the majority of the Title Board, the Secretary's lone dissent would not control. The majority vote of the two remaining members would cause the Title Board to act contrary to the Secretary's vote. Moreover, respondents provide no basis upon which proponents or opponents of an initiated measure could determine when the secretary's vote represents the secretary's official action, either preliminary or final.

▮ Respondents offer an approach that is both rational and practical; however, they cannot direct us to clear language in the

---

**3.** Both *Election Reform Amendment*, 852 P.2d at 31, and *Workers' Comp Initiative*, 850 P.2d at 145, addressed §§ 1–40–101 and –102, 1B C.R.S. (1992 Supp.). Section 1–40–101 was repealed and recodified as amended at 1–40–105, 1B C.R.S. (1995 Supp.). Section 1–40–102 was re-

pealed and substantially recodified as amended at § 1–40–107, 1B C.R.S. (1995 Supp.). We find no basis to suggest that the 1993 amendments to Article 40 were intended to alter the result reached in *Workers' Comp Initiative* and *Election Reform Amendment*.

controlling statute to support their position. We believe it more prudent not to view the Secretary of State's actions as a member of the Title Board as coterminous with her actions as Secretary of State. Our charge as a reviewing court requires that the clear language of the controlling statutes guide us. Moreover, we are bound by our precedent, which holds that the authority to set an election date or to place any measure on the ballot "is vested in the Secretary of State *alone.*" *Workers' Comp Initiative*, 850 P.2d at 145 (emphasis added). We only add today that such authority is not exercised while casting a single vote for the purpose of setting the title and summary of an initiative measure as a member of the Title Board.

## C

■ Previously, we have stated that "[t]he [Title] Board has no authority to place any measure on a ballot," concluding "[t]hat function is reserved solely to the secretary of state, who has not acted." *Election Reform Amendment*, 852 P.2d at 33. The respondents do not offer any authority to support their proposition that the Title Board is able to determine, preliminarily or finally, the eligibility of initiative issues to appear on statewide ballots. Recognizing such power in the Title Board conflicts with the applicable statutes that place such authority with the Secretary of State. Under section 1–40–108, the Secretary of State, and not the Title Board, determines whether an initiative measure can be placed on the statewide ballot. That section provides:

> No petition for any ballot issue shall be of any effect unless filed with the secretary of state within six months from the date that the titles, submission clause, and summary have been fixed and determined pursuant to the provisions of sections 1–40–106 and 1–40–107 and unless filed with the secretary of state within the time required by the state constitution before the election at which it is to be voted upon. A petition for

a ballot issue for the election to be held in November of odd-numbered years shall be filed with the secretary of state within the same time before such odd-year election as is required by the state constitution for issues to be voted on at the general election. All filings under this section must be made by 3 p.m. on the day of filing.

§ 1–40–108(1), 1B C.R.S. (1995 Supp.).

Section 1–40–108 suggests that the Secretary of State will exercise that authority only *after* the Title Board has acted to set the title and summary, and petitions have been circulated and signatures collected.[4] Hence, because the Title Board had not set the title and summary at the time it acted on petitioners' motion for rehearing, the Secretary of State could not have acted under section 1–40–108. As respondents concede, a final determination of eligibility for placement on the statewide ballot, which is subject to review, had not yet occurred. The fact that the Secretary of State had not yet made any determination as to the eligibility contemplated by section 1–40–108 did not grant to the Title Board any authority to determine the same.

The right to participate by initiative was implicated because the Title Board failed to hear the petitioners' motion in a timely manner, which delayed the Title Board's final determination setting the title and summary. Such a delay not only affects opponents, but proponents who could utilize the additional time guaranteed by statute for collection of signatures, public debate, or otherwise. Applying the petitioners' interpretation, i.e., the motion must be heard within forty-eight hours, the Title Board would have heard petitioners' motion on or before May 26, almost two weeks earlier than the June 7 date set by the Title Board.

■ In the face of such clear statutory language, we believe any change in the Title Board's meeting or hearing dates which are specified by statute, should be accom-

---

4. This proposition is not explicitly stated in § 1–40–108. However, it can be extrapolated from the following: (1) a petition cannot be circulated before the title, submission clause, and summary have been fixed, § 1–40–107(4), 1B C.R.S. (1995 Supp.); (2) a petition has no effect until filed

with the Secretary, § 1–40–108(1), 1B C.R.S. (1995 Supp.); and (3) the Secretary would have no reason to make the required determination of eligibility for the ballot until an effective petition is before the Secretary.

plished by legislative enactment and not judicial intervention. We hold that the Title Board is obliged to hear motions for rehearing on ballot initiatives which were set during the last meeting in May within forty-eight hours, in accordance with section 1–40–106(1).[5]

## IV

In sum, section 1–40–106(1), 1B C.R.S. (1995 Supp.), states that "the last meeting [of the Title Board] shall be held no later than the third Wednesday in May in the year in which the measure is to be voted on." Section 1–40–107(1) states that "if the titles and summary protested were set at the last meeting in May, the motion shall be heard within forty-eight hours after the motion is filed." *Id.* Because the titles, submission clause, and summary for Amend Tabor No. 25 were set at its last meeting in May 1995, we hold that the Title Board erred by not hearing the petitioners' motion for rehearing within forty-eight hours after the motion was filed, as expressly provided by section 1–40–107(1), 1B C.R.S. (1995 Supp.).

Accordingly, we disapprove of the Title Board's action.

MULLARKEY, J., dissents.

### Justice MULLARKEY dissenting:

The majority holds that the Initiative Title Setting Board (the "Title Board") is required by statute to act upon the petitioners' motion for rehearing on an initiative considered during its last meeting in May 1995 within forty-eight hours of filing of the motion. The majority's holding is based on the language in sections 1–40–106(1), 1–40–107(1), 1B C.R.S. (1995 Supp.), and a construction of section 1–40–108(1), 1B C.R.S. (1995 Supp.). I disagree. I would approve the Title Board's action because I find that the forty-eight hour rehearing requirement is not triggered in an odd-numbered year where the Secretary of State ("Secretary") makes a

preliminary determination that the initiative is a non-Amendment 1 measure which may appear on the ballot only in a general election held in an even-numbered year. Accordingly, I respectfully dissent.

I would base my conclusion on the following. First, the statutory scheme, as amended in 1993, creates two schedules pursuant to which the Title Board considers initiatives, a one-year schedule and a two-year schedule. These two alternate schedules are required by the enactment of Article X, Section 20 of the Colorado Constitution ("Amendment 1").

Second, although only the Secretary has the statutory authority to place a measure on the ballot, that authority is not in question in this case. Here, the Secretary made a preliminary determination that the subject initiative was *not eligible* to be placed on the ballot in 1995. Actual placement of the initiative on the ballot cannot be determined until the proponents file the circulated petitions with the Secretary and the Secretary determines there are sufficient signatures to place the measure on the ballot. Accordingly, sections 1–5–203 and 1–40–122, 1B C.R.S. (1995 Supp.), pursuant to which only the Secretary can certify the ballot and ballot title, are not implicated.

Third, section 1–40–108 has no bearing on when the Secretary determines whether a proposed initiative is an Amendment 1 measure or not. The Secretary's preliminary determination that the initiative was not eligible to appear on the ballot in 1995 was not premature and, in accordance with her determination, the forty-eight hour requirement was not invoked. Therefore, I would hold that the petitioners' motion was properly scheduled for consideration at the Title Board's next regularly scheduled meeting following its May 17, 1995 meeting. *See* § 1–40–107(1).

Article V, Section 1 of the Colorado Constitution, adopted by popular vote in 1910, created the initiative and referendum process.[1]

---

5. By our decision today, we do not address the Title Board's practice of conducting its meetings under two schedules and whether it may continue, in both even and odd numbered years, to

hold meetings after the third Wednesday in May. That administrative practice is not before us.

1. By proclamation of the governor, a special session of the General Assembly was convened in

Initiatives could appear on the ballot only in an even-numbered election year because, historically, statewide general elections were held biennially in even-numbered years.[2] For more than eighty years, all statewide initiatives were considered on a two-year schedule. This system was changed in 1992 by the enactment of Amendment 1, which permitted statewide elections for limited purposes to be held in odd-numbered years. Colo. Const. art. X, § 20(3). Amendment 1, however, generated considerable confusion. In particular, Amendment 1 did not address what types of measures were eligible to appear in an odd-year election. In 1993, to clarify a perceived ambiguity in the language of Amendment 1, the General Assembly passed Senate Bill 93-98 ("S.B. 98"), subsequently codified at Article 41 of Title 1 of the Colorado Revised Statutes, specifying that only measures pertaining to debt, tax, and spending were eligible to appear on the ballot in an odd-year election ("Amendment 1 measures"). § 1-41-102, 1B C.R.S. (1995 Supp.) (Amendment 1 measures relate to debt, tax, or spending). Other initiatives ("non-Amendment 1 measures") continue to follow the historical two-year cycle and may appear on the ballot only in general elections. It is this difference in the content of even-numbered and odd-numbered year elections with respect to initiatives that caused the scheduling dispute that is at issue in this case.

Prompted by the increasingly prohibitive costs of the initiative process, the Secretary proposed Senate Bill 93-135 ("S.B. 135") which was intended to streamline the initiative process and reduce costs. While S.B. 135 was winding its way through the legislative process, S.B. 98 was in the process of final enactment.[3] As a result, the Secretary sought to amend S.B. 135 in order to bring Article 40 into conformity with S.B. 98. The amendments suggested by the Secretary were incorporated into S.B. 135 by the House Committee on Business Affairs & Labor and now appear in section 1-40-106(1).

During the hearings before the Senate and House Committees on Business Affairs & Labor (respectively the "Senate Committee" and the "House Committee"), then-Secretary of State Natalie Meyer addressed the Senate Committee and her representative, Donetta Davidson, addressed the House Committee on S.B. 135. Their comments are instructive on the two-fold effects of the 1993 amendments to Article 40, specifically, rendering the initiative process more cost efficient and conforming Article 40 to S.B. 98.

In her comments before the Senate Committee, the Secretary explained that S.B. 135 amended section 1-40-107(1) in three respects: (1) it extended the time period that proponents had to file a petition for rehearing from 48 hours (after the Title Board set the title and summary) to seven days; (2) it decreased the time frame that an opponent had to file a rehearing petition from fifteen days to seven days; and (3) it granted the Title Board additional time in which to prepare for petitions for rehearing (from forty-eight hours to its next regularly scheduled meeting). *Hearing on S.B. 93-135 Before the Senate Comm. on Business Affairs & Labor,* 59 Gen. Assembly, 1st Reg. Sess. (hearing tape 93-6, February 8, 1993, at 3:39 p.m.) (statement of Natalie Meyer, Secretary of State).

The Secretary explained that these changes were proposed because the Title Board was overwhelmed with rehearing petitions. Under the time frames existing prior to 1993, the Title Board was required to hear all motions for rehearing within forty-eight hours of the motion. The Title Board potentially faced successive challenges by the proponents and the opponents of an initiative.

August 1910 in which an amendment to the constitution, entitled the "Initiative and Referendum Law," was proposed to be submitted to the people at the general election to be held in that year. *See Pearce v. People,* 53 Colo. 399, 399-400, 127 P. 224, 225 (1912).

2. Article V, Section 1(4) of the Colorado Constitution states that "[a]ll elections on measures initiated by or referred to the people of the state shall be held at the biennial regular general election...."

3. S.B. 98 was on a fast track and was considered first by the Senate Affairs Committee on January 19, 1993, second by the Senate Judiciary Committee on January 25, 1993, and last by the House Affairs Committee on February 4, 1993.

Each contest would have to be considered by the Title Board within forty-eight hours. *Hearing on S.B. 93–135 Before the Senate Comm. on Business Affairs & Labor,* 59 Gen. Assembly, 1st Reg. Sess. (hearing tape 93–6, February 8, 1993, at 3:39 p.m.) (statement of Natalie Meyer, Secretary of State). Consequently, the Title Board had insufficient time in which to research and prepare for rehearings. *Id.*

The purpose of S.B. 135, as well as the Secretary's comments before the Senate Committee, support the proposition that the General Assembly amended section 1–40–107(1) because it recognized that the Title Board could not adhere to the expedited time requirements for rehearing petitions. It follows that the forty-eight hour rehearing requirement for titles and summaries set by the Title Board in its last meeting in May was not intended to include those measures that would not be on the ballot that particular election year. This intent is amply reflected in the House Committee amendments to S.B. 135, which created the two schedules required by Amendment 1.

The House Committee hearings on S.B. 135 were held after passage of S.B. 98 was assured. In her comments before the House Committee, Donetta Davidson explained that the Secretary was proposing amendments to S.B. 93–135, affecting section 1–40–106(1), in order to bring it into alignment with S.B. 98. Addressing the odd-year and even-year time frames for different types of initiatives that flowed from S.B. 98, Ms. Davidson made the following statement:

> Also, what is not in the amendments that I feel that it also should be changed because of [S.B. 98] . . . after "being held no later than the third Wednesday of May," we should add in that area "in the year in which the measure is to be voted on." If it's a tax issue the way [S.B. 98] is written, they would have to have it [the election] within each year. But if it's not a tax issue that has to be placed on the ballot within the year then it would go—the Title Board would continue from December after the election clear through the odd year into the even year into May. So, there would

not be a cutoff on any other type of initiative process.

*Hearings on S.B. 93–135 Before the House Comm. on Business Affairs & Labor,* 59 Gen. Assembly, 1st Reg. Sess. (hearing tape 93–21, March 30, 1993, at 3:03 p.m.) (statement of Donetta Davidson, representative of the Secretary of State).

The language suggested by Ms. Davidson was incorporated into section 1–40–106(1) so that, as enacted, the relevant sentence reads:

> The first meeting of the title board shall be held no sooner than the first Wednesday in December after an election, and *the last meeting shall be held no later than the third Wednesday in May in the year in which the measure is to be voted on.*

§ 1–40–106(1), 1B C.R.S. (1995 Supp.) (emphasis added). Notably, the majority also emphasizes this language. *See* maj. op. at 5.

These comments plainly indicate that the Secretary contemplated two schedules, a one-year cycle for Amendment 1 measures and a two-year cycle for non-Amendment 1 measures. The House Committee incorporated the Secretary's suggested language into S.B. 135 and the bill was so enacted. The General Assembly intended the Title Board to follow two different cycles depending on the nature of the initiative proposed. Under the two-cycle dichotomy, the Title Board can consider proposed Amendment 1 measures beginning with the date of its first meeting of the year which is no sooner than the first Wednesday in December after an election, whether that election is a general or odd-year election. Its last meeting, for purposes of proposed Amendment 1 measures, must be held no later than the third Wednesday in May of the following year. For proposed non-Amendment 1 measures, the Title Board is on a two-year cycle. It meets no sooner than the first Wednesday in December following a *general* election (held in an even-numbered year) and holds its last meeting on the third Wednesday in May in the year of the next general election (the next even-numbered year).

The majority's holding significantly affects the Title Board's operations in a manner that contravenes the General Assembly's intent in implementing the 1993 amendments to Arti-

cle 40. Under the majority's holding, the Title Board (1) is precluded from designating titles and summaries on any proposed initiatives (whether Amendment 1 or non-Amendment 1 measures) between its last meeting in May and its first meeting in December of the same year, and (2) is required to consider all motions for rehearings on titles and summaries designated during its last meeting in May within forty-eight hours regardless of whether the proposed initiative is an Amendment 1 measure or a non-Amendment 1 measure. The latter renders meaningless the language in section 1–40–106(1) requiring the Title Board to hear motions for rehearing within forty-eight hours of the last meeting in May only for those initiatives *to be voted on in that year*. The former is a restraint on the power of initiative because it curtails the circulation of initiative petitions. Proponents cannot circulate petitions until the title and summary have been set. In my view, these constraints offend the statutory scheme and are unnecessary and impractical.

The circumstances warrant a finding that the Secretary made the preliminary determination that the initiative now before us fell into the non-Amendment 1 category and could not be placed on the November 1995 ballot. Under section 1–40–106(1), the Secretary convenes all of the meetings of the Title Board. As a member of the Title Board, the Secretary is well acquainted with all of the initiatives before the Title Board. Therefore, by scheduling the petitioners' motion for rehearing for June 7, 1995, the Title Board's next regularly scheduled meeting, she preliminarily determined that the subject initiative was a non-Amendment 1 initiative and did not have to be considered within forty-eight hours.

The Secretary's preliminary determination triggered the two-year cycle. Thus, the subject initiative was not eligible to appear on the ballot in November 1995, an odd-year election, and the proponents of the initiative were not harmed by the Title Board's failure to hold a rehearing within forty-eight hours. "[T]he last meeting," referenced in section 1–40–106(1), would not have been the meeting held on May 17, 1995, since, pursuant to section 1–40–106(1), the initiative was not going to be "voted on" in 1995. Rather, the initiative would be "voted on" in the next general election to be held in November 1996. Consequently, the Title Board was required to hear "[t]he motion for rehearing ... at the next regularly scheduled meeting." § 1–40–107(1). The "next regularly scheduled meeting" of the Title Board after its May 17, 1995 meeting was held on June 7, 1995. The Secretary appropriately scheduled the petitioners' motion for rehearing for that meeting.

I agree with the respondents that the two alternative schedules created by the General Assembly to accommodate Amendment 1 require the Secretary to preliminarily determine the nature of the initiative in advance of the filing of circulated petitions complete with qualifying signatures.

The majority reaches the opposite conclusion by incorrectly construing section 1–40–108(1). Section 1–40–108(1) mandates that: (1) a petition must be filed with the Secretary within six months of the date that a title and summary have been fixed; and (2) a petition must be filed with the Secretary within the time required by the state constitution. This provision does not preclude the Secretary from making a preliminary decision on the nature of the initiative. Nor is such a restraint compelled by our prior decisions.[4]

---

**4.** The petitioners cite two of our prior decisions as support for the proposition that the Secretary cannot make a preliminary determination of the initiative's eligibility for a given election year until petitions have been filed. *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Proposed Election Reform Amendment*, 852 P.2d 28 (Colo.1993) (*"Election Reform Amendment"*); *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Workers Comp Initiative*, 850 P.2d 144 (Colo. 1993) (*"Workers Comp Initiative"*).

*Election Reform Amendment* and *Workers' Comp. Initiative* are irrelevant to our present analysis because they arose prior to the effective date of the 1993 amendments to Article 40. Thus, they do not address the statutory language at issue here which was added by virtue of those amendments. Moreover, these cases pertain specifically to our ability to review a substantive decision that only the Secretary is authorized to make, *i.e.,* placement of a measure on a given ballot. In both cases, we did not undertake substantive review because we held that the deci-

As a member of the Title Board, the Secretary is actively involved throughout the initiative process, including setting titles and summaries. By virtue of this involvement the Secretary is fully familiar with an initiative before the signed petitions are filed and is well-positioned to render a preliminary determination.

For the foregoing reasons, I respectfully dissent. I would approve the Title Board's action.

sion had not been effected. Accordingly, substantive review by this court was found to be premature. Similarly, the Secretary has not placed the initiative at issue here on the ballot and hence, substantive review is premature.

In sum, these cases simply do not support the proposition that it is premature for the Secretary to contemplate an initiative's eligibility while the title and summary are under consideration.