**In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY WITH REGARD TO A PROPOSED PETITION FOR AN AMENDMENT TO THE CONSTITUTION OF THE STATE OF COLORADO ADDING PARAGRAPH (d) SUBSECTION (8) OF SECTION 20 OF ARTICLE X (AMEND TABOR NO. 32).**

**Margaret S. Zekman and Ralph Lee Bryant, Petitioners,**

and

**Douglas Bruce and Clyde Harkins, Respondents,**

and

**Victoria Buckley, Stephen Erkenbrack, and Rebecca Lennahan, Title Setting Board.**

**No. 95SA301.**

Supreme Court of Colorado.
En Banc.

Dec. 18, 1995.

Susan E. Burch Denver, for Petitioners.

Douglas Bruce, pro se.

Clyde Harkins, pro se.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice Knaizer, Deputy Attorney General, General Legal Services Section, Denver, Colorado, for Title Setting Bd.

Justice ERICKSON delivered the Opinion of the Court.

The petitioners Margaret S. Zekman and Ralph Lee Bryant, as registered electors of the state of Colorado, bring this original proceeding pursuant to section 1–40–107(2), 1B C.R.S. (1995), to review the action of the initiative title setting board (the Board) in setting the title, ballot title and submission clause, and summary for a proposed initiative constitutional amendment designated as "Amend Tabor 32" (the Initiative).[1] We approve the action of the Board.

The Initiative would add a new paragraph (d) to subsection (8) to article X of the Colorado Constitution. The text of the Initiative is attached as APPENDIX A. The text of the title, ballot title and submission clause, and summary as prepared by the Board are attached as APPENDIX B.

The petitioners contend that the Initiative violates article V, section 1(5.5) of the Colorado Constitution because it fails to contain a single-subject which can be clearly expressed in the title. They argue that the title, ballot title and submission clause, and summary do not fairly express the true intent and meaning of the Initiative and would confuse and mislead the public. We reject the petitioners' contentions.

I

On August 2, 1995, the Initiative was submitted to the Colorado Secretary of State. The Board held a hearing on August 16, 1995, pursuant to section 1–40–106(1), 1B C.R.S. (1995 Supp.),[2] and fixed a title, ballot title and submission clause, and summary for the Initiative. On August 23, 1995, the petitioners filed a motion for rehearing contending that the Board's action should be set aside because: (1) the Initiative violated the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution; (2) the title, ballot title and submission clause, and summary do not correctly and fairly express the true intent and meaning of the proposed constitutional amendment; and (3)

---

1. In *In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25*, 900 P.2d 121, 124–25 (Colo.1995), we reviewed the original version of the Initiative at issue in the present case which proposed the application of a $40 tax credit as well as procedural requirements for future ballot titles. We held that the initiative violated the single-subject requirement in article V, section 1(5.5) of the Colorado Constitution because it failed to establish a proper connection between the establishment of the $40 tax credit and the amendment of procedures relating to future voter initiatives. *Id.* at 125. The Initiative before us in the present case proposes the application of a $60 tax credit and does not contain any references to procedural rules for future ballot title initiatives.

2. Section 1–40–106(1) provides in relevant part:

For ballot issues ... the secretary of state shall convene a title board consisting of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee. The title board, by majority vote, shall proceed to designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause.

the title, ballot title and submission clause, and summary as fixed by the Board "are likely to cause confusion and are misleading as to the content of the proposed constitutional amendment." On September 6, 1995, after a hearing, the Board denied the petitioners' motion for rehearing in its entirety.

## II

The right to initiate constitutional amendments is reserved to the registered electors of the state of Colorado by article V, section 1 of the Colorado Constitution. Article V, section 1(5.5), an amendment approved by the electorate in 1994, imposes a single-subject requirement for initiatives and provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5); *see* Senate Concurrent Resolution 93–4, 1993 Colo.Sess. Laws 2152.

The single-subject requirement is designed to protect the voters from surprise and fraud, § 1–40–106.5(1)(e)(II), 1B C.R.S. (1995 Supp.), and to "forbid the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits." § 1–40–106.5(1)(e)(I), 1B C.R.S. (1995 Supp.); *see In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25,* 900 P.2d 121, 124–25 (Colo.1995)

(hereafter *Amend Tabor 25* ); *In re Proposed Initiative "Public Rights in Waters II",* 898 P.2d 1076, 1078 (Colo.1995) (hereafter *"Public Rights in Waters II"* ).

The Board is directed by statute to designate and fix a title, ballot title and submission clause, and a summary for initiated petitions before they are signed by the electors. § 1–40–106, 1B C.R.S. (1995 Supp.). In carrying out its duty to set titles for ballot initiatives, the Board "should apply judicial decisions construing the constitutional single-subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." § 1–40–106.5(3), 1B C.R.S. (1995 Supp.).[3]

■ A proposed measure violates the single-subject requirement if its "text relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other." *In re Title, Ballot ,Title and Submission Clause, and Summary Regarding Petition Procedures,* 900 P.2d 104, 109 (Colo. 1995) (hereafter *Petition Procedures* ); *see "Public Rights in Waters II",* 898 P.2d at 1078–79; *People v. Sours,* 31 Colo. 369, 405, 74 P. 167, 178 (1903). The single-subject requirement "forbid[s] the treatment of incongruous subjects in the same measure." § 1–40–106.5(1)(e)(I). Thus, if an initiative effects one general object or purpose, it will satisfy the single-subject requirement. *See Amend Tabor 25,* 900 P.2d at 125; *Petition Procedures,* 900 P.2d at 109; *"Public Rights in Waters II",* 898 P.2d at 1079.

## III

### A

The petitioners contend that the Initiative violates the constitutional single-subject requirement because it applies a $60 tax credit to more than one tax and requires the state to replace monthly local government reve-

---

**3.** Article V, section 21 of the Colorado Constitution contains the single-subject requirement for bills and provides:

> No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its

title; but if any subject shall be embraced in any act which shall not be expressed in the title; such act shall be void only as to so much thereof as shall not be so expressed.

Colo. Const. art. V, § 21.

nues lost because of the tax credit. We disagree.

■ In reviewing an action of the Board, we must liberally construe the single-subject and title requirements for initiatives. *See* § 1–40–106.5(2), 1B C.R.S. (1995 Supp.). Here, the Initiative seeks to establish a $60 tax credit that applies to six state or local taxes and requires the state to replace on a monthly basis local revenues that are lost because of the tax credit provision. Although the Initiative applies the tax credit to more than one tax, the single purpose of the Initiative is the implementation of a tax credit. All six taxes are connected to the same tax credit and are bound by the same limitations. The provision of the Initiative requiring mandatory replacement of lost local government revenues is dependent upon and closely connected to the $60 tax credit. The Initiative relates to a single definite object or purpose and does not impermissibly encompass multiple unrelated subjects. *Cf. Amend Tabor 25*, 900 P.2d at 124–25 (holding that an initiative which proposed the application of a $40 tax credit as well as procedural requirements for future ballot titles violated single-subject requirement); *Petition Procedures*, 900 P.2d at 109 (holding that an initiative dealing with retroactive fundamental rights, judicial review of petitions, and recall, referendum, and petition procedures violated constitutional single-subject requirement); *"Public Rights in Waters II"*, 898 P.2d at 1078–79 (holding that an initiative proposing elections for water conservancy and conservation districts and development of public trust water rights doctrine sought to accomplish two distinct purposes and violated single-subject requirement). Accordingly, we conclude that the Initiative does not violate the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution.

### B

The petitioners contend that, even if the Initiative constitutes a single subject, the title and ballot title and submission clause do not correctly and fairly express the true intent and meaning of the proposed constitutional amendment and will confuse and mislead the voters. We reject this argument.

■ The title, ballot title and submission clause, and summary must "fairly express the true intent and meaning" of the proposed initiative and must inform the voters of the effect of support of or opposition to the initiative. § 1–40–106(3)(b), 1B C.R.S. (1995 Supp.); *see In re Proposed Initiative Concerning "State Personnel Sys."*, 691 P.2d 1121, 1123 (Colo.1984).

■ In reviewing the Board's exercise of discretion, we will "engage in all legitimate presumptions in favor of the propriety of the Board's actions." *Petition Procedures*, 900 P.2d at 108. *See In re Proposed Initiative "Auto Ins. Coverage"*, 877 P.2d 853, 856 (Colo.1994). The Board's action will be set aside only if the language used by the Board in fixing a title is inaccurate or misleading with respect to the meaning and intent of the initiative. *Petition Procedures*, 900 P.2d at 109; *In re Proposed Initiative "Auto Ins. Coverage"*, 877 P.2d at 856.

■ In the present case, the title and ballot title and submission clause properly identify that the purpose of the Initiative is to enact a tax credit. The title and ballot title and submission clause track the text of the Initiative almost verbatim and do not obscure its true meaning or intent.

The petitioners concede that the title and ballot title and submission clause essentially repeat the text of the Initiative, but argue that they still fail to inform the voters about the Initiative's true meaning. This argument is nothing more than an attack on the Initiative as written. The petitioners do not allege that the title and ballot title and submission clause, as fixed by the Board, conceal or fail to describe important features of the Initiative. The petitioners fail to demonstrate that the language used by the Board is inaccurate or misleading with respect to the meaning and intent of the Initiative, and accordingly, their argument must fail.

### C

Finally, the petitioners argue that the summary impermissibly contains "campaign phraseology" and inaccurately explains the

tax and revenue implications of the Initiative. We disagree.

The Board is directed by statute to prepare a summary that "shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." § 1–40–106(3)(a), 1B C.R.S (1995 Supp.). If the Board determines that the proposed initiative will have a fiscal impact on the state or any of its political subdivisions, "the summary must include an estimate of any fiscal impact, together with an explanation thereof." *Id.*

■ The fiscal impact statement contained in the summary of the Initiative provides, in part:

> The tax credit applied to the state telephone taxes would reduce the growth in state general fund revenue by $348,859,565 during the five-year period beginning with fiscal year 1997–98. The tax credit applied to state income tax returns would reduce the growth in state general fund revenue by $925,521,440 during the same five-year period.

The petitioners contend that this provision incorporates "campaign phraseology" because "current political debate includes significant disagreement over the effect of a change in tax policy, and whether that change actually constitutes a cut in current revenue or merely slows the rate of growth in revenue in the future." The petitioners also contend that the provision in question is "less than accurate." We reject these contentions.

■ It is well established that the use of catch phrases or slogans in the title, ballot title and submission clause, and summary should be carefully avoided by the Board. *See, e.g. In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Proposed Initiative Designated "Governmental Business"*, 875 P.2d 871, 875–77 (Colo.1994) (holding that the characterization of an initiative on governmental business as applying laws on "consumer protection" and "open government" contained catch phrases and slogans); *In re Title, Ballot Title, and Submission Clause Respecting the Proposed Initiated Constitutional Amendment Concerning Ltd. Gaming in the City of Antonito,* 873 P.2d 733, 741 (Colo.1994) (holding that phrases "adjusted net proceeds" and "adjusted gross proceeds" as used in title, ballot title and submission clause, and summary of initiative regarding expansion and taxation of limited gaming were not catch phrase slogans); *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Workers Comp. Initiative,* 850 P.2d 144, 147–48 (Colo.1993) (holding that phrase "Worker's Choice of Care" contained in summary of proposed initiative to allow worker's compensation recipients to choose their health care provider did not amount to a catch phrase); *In re Title, Ballot Title, Submission Clause and Summary Pertaining to the Proposed Initiative on Surface Mining,* 797 P.2d 1275, 1281 (Colo.1990) (holding that phrase contained in the summary stating that surface mining may "scar the land" accurately and fairly repeated the language of proposed initiative); *Say v. Baker,* 137 Colo. 155, 160, 322 P.2d 317, 320 (1958) (holding that the phrase "Freedom to Work" contained in the ballot title and submission clause constituted a catch phrase).

Here, the petitioners fail to offer any evidence that the fiscal impact statement in the summary contains an impermissible catch slogan beyond their bare assertion that political disagreement currently exists over the effect of a change in tax policy. We conclude that the provision at issue does not constitute a political catch phrase or slogan and that the summary sufficiently describes the intent of the Initiative.

■ The petitioners also fail to provide any evidence to support their contention that the summary inaccurately describes the fiscal impact of the Initiative. The purpose of the fiscal impact statement is to inform the electorate of the fiscal implications of the proposed measure. *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to a Proposed Initiative on "Fair Fishing",* 877 P.2d 1355, 1363 (Colo.1994) (hereafter *"Fair Fishing"*). Here, the summary fairly reflects that the tax credit will effect a specific reduction in the state general fund during the five year period following the adoption of the Initiative. *See In re Title,*

Ballot Title and Submission Clause, and Summary With Regard to a Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petitions), 907 P.2d 586, 593 (Colo. Dec. 4, 1995) (holding that summary fairly reflected intent of proposed initiative and noting that objectors to initiative failed to offer evidence to support their contention that summary was inaccurate); *"Fair Fishing"*, 877 P.2d at 1363 (holding that fiscal impact statement accurately reflected the true intent of the initiative). Because the summary is a true and impartial statement as to the intent of the Initiative, we will not disturb the Board's action.

## IV

For the foregoing reasons, the action of the Board is approved.

MULLARKEY, J., concurs in part and dissents in part.

## APPENDIX A

Be it Enacted by the People of the State of Colorado:

Article X, section 20, The Taxpayer's Bill of Rights, is amended to add:

(8)(d) After calendar year 1996, a $60 tax credit, to increase $60 or more yearly above its level the year before but not to exceed the tax due, shall apply uniformly to each state or local telephone bill tax, specific ownership tax, business personal property tax, abatements and refunds levy, county or city and county levy spent on social services or courts, and state income tax return due, with monthly state replacement of local revenue impacts.

## APPENDIX B

**Proposed Initiative on "AMEND TABOR—REVENUE CHANGES RESUBMITTED # 32"**

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION TO ESTABLISH A SIXTY–DOLLAR TAX CREDIT THAT INCREASES ANNUALLY BY AT LEAST SIXTY DOLLARS, NOT TO EXCEED THE TAX DUE, TO BE APPLIED TO EACH STATE OR LOCAL TELEPHONE BILL TAX, SPECIFIC OWNERSHIP TAX, BUSINESS PERSONAL PROPERTY TAX, ABATEMENTS AND REFUNDS LEVY, COUNTY OR CITY AND COUNTY LEVY SPENT ON SOCIAL SERVICES OR COURTS, AND STATE INCOME TAX RETURN, WITH MONTHLY STATE REPLACEMENT OF LOCAL REVENUE IMPACTS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION TO ESTABLISH A SIXTY–DOLLAR TAX CREDIT THAT INCREASES ANNUALLY BY AT LEAST SIXTY DOLLARS, NOT TO EXCEED THE TAX DUE, TO BE APPLIED TO EACH STATE OR LOCAL TELEPHONE BILL TAX, SPECIFIC OWNERSHIP TAX, BUSINESS PERSONAL PROPERTY TAX, ABATEMENTS AND REFUNDS LEVY, COUNTY OR CITY AND COUNTY LEVY SPENT ON SOCIAL SERVICE OR COURTS, AND STATE INCOME TAX RETURN, WITH MONTHLY STATE REPLACEMENT OF LOCAL REVENUE IMPACTS?

The summary prepared by the Board is as follows:

This measure amends article X, section 20 of the Colorado Constitution, by adding a new paragraph (d) to subsection (8). A sixty-dollar tax credit, increased by sixty dollars or more each year above the prior year's level, but not to exceed the tax due, is uniformly applied to each state or local telephone bill tax, specific ownership tax, business personal property tax, abatements and refunds levy, county or city and county levy spent on social services or courts, and state income tax return. The initial credit of sixty dollars is applied to taxes due after December 31, 1996. The state is required to replace monthly any revenue impacts on local governments as a result of the credits established by this measure.

The tax credit applied to state telephone taxes would reduce the growth in state general fund revenue by $348,859,565 during the five-year period beginning with fiscal year 1997–98. The tax credit applied to state income tax returns would reduce the growth in state general fund revenue by $925,521,440 during the same five-year period.

The cost to the state of replacing local government revenue losses during the five-year period beginning with fiscal year 1997–98 would be as follows: Local telephone tax credit—$163,843,491; Specific ownership tax credit—$1,069,231,014; Business personal property tax credit—$192,443,801; Abatements and refunds levy property tax credit—$25,663,110; and Amounts spent on social services and courts property tax credit—$484,948,701.

The combined effect of the revenue reductions and the increased expenditure requirements yield a net negative state fiscal impact of $3,210,511,122 during the five-year period beginning with fiscal year 1997–98.

The measure provides that local revenue impacts will be replaced by the state and appears to be intended to have no negative fiscal impact on local governments. However, assessors may have additional record-keeping requirements associated with tracking the business personal property tax credits and the measure may therefore have an indeterminate negative fiscal impact on local governments.

Justice MULLARKEY concurring in part and dissenting in part:

The majority holds that: (1) the proposed initiative constitutional amendment designated as "Amend Tabor 32" (the Initiative) does not violate the single-subject requirement; (2) the title, ballot title and submission clause correctly and fairly express the true intent of the proposed constitutional amendment; (3) the summary is not confusing or misleading. I agree with the majority's overall analysis and conclusions except that I would reject the fiscal impact statement, which is part of the summary, because it is affirmatively misleading.

If the initiative title setting board (the Board) determines that a proposed measure will have a fiscal impact on the state or any of its political subdivisions, the Board must include a fiscal impact statement in the summary of the proposed measure. § 1–40–106(3)(a), 1B C.R.S. (1995 Supp.). The fiscal impact statement informs the electorate of the fiscal implications of the proposed measure. *In re Title, Ballot Title, and Submission Clause Respecting the Proposed Initiated Constitutional Amendment Concerning Limited Gaming in the City of Antonito,* 873 P.2d 733, 742 (Colo.1994). As an integral part of the summary of those initiatives requiring it, the fiscal impact statement is subject to the same standards as the summary.

Here, the fiscal impact statement provided the following:

The tax credit applied to state telephone taxes would *reduce the growth* in state general fund revenue by $348,859,565 during the five-year period beginning with fiscal year 1997–98. The tax credit applied to state income tax returns would *reduce the growth* in state general fund revenue by $925,521,440 during the same five-year period.

(Emphasis supplied.)

The Board must be scrupulously neutral and fair in preparing its summary. Use of the phrase "reduce the growth" is affirmatively misleading because a reasonable reader would understand it to mean that the state general fund will continue to increase while the state makes refunds to taxpayers and reimbursements to local government as required by the Initiative. In fact, the state will be required to make refunds and reimbursements under the Initiative regardless of whether the general fund increases, decreases, or stays the same. The Board's descriptions of the Initiative's effect as "reducing the growth" of the general fund would cause voters to believe that the estimated 1.3 billion dollars over five years, which implementation of the Initiative will cost, will come from excess funds or new money.

In my opinion, the fiscal impact statement should state simply that implementation of the Initiative will reduce the general fund by

the specified amounts.[1] That is a plain, accurate statement as the summary ought to be. It should be left to the proponents and opponents of the Initiative to argue its effect.

Accordingly, I respectfully dissent because I would strike this phrase from the fiscal impact statement portion of the summary.

---

1. In upholding the fiscal impact statement, the majority does not accurately paraphrase the critical language. It states that "the summary fairly reflects that the tax credit will *effect a specific reduction* in the state general fund during the five year period following the adoption of the Initiative." Maj. op. at 130 (emphasis added). If that was the wording of the fiscal impact statement, I would have no objection. Unfortunately, the actual phrase used is "reduce the growth" in state general fund revenue.