913 P.2d 1127 (1996)
In re PROPOSED BALLOT INITIATIVE ON PARENTAL RIGHTS.
Louis L. KELLEY, Kate L. Reinisch, and James Allan McGregor, Petitioners,
v.
Tom TANCREDO, Leah Delay, Ken Gray, Leslie Hanks, Douglas Campbell, Mark Paschall, Clyde Harkins, and Pat Miller, Respondents, and
Victoria Buckley, Gail Norton, and Douglas Brown, Title Setting Board.
No. 95SA398.
Supreme Court of Colorado, En Banc.
April 1, 1996.
*1129 Justice ERICKSON delivered the Opinion of the Court.
The petitioners, Louis L. Kelley, Kate L. Reinisch, and James Allan McGregor, as registered electors of the state of Colorado, bring this original proceeding pursuant to section 1-40-107(2), 1B C.R.S. (1995 Supp.), to review the action of the initiative title setting board (the Board) in fixing the title, ballot title and submission clause, and summary for a proposed initiative constitutional amendment designated as "Parental Rights" (the Initiative). We approve the action of the Board.
The Initiative would amend article II, section 3 of the Colorado Constitution by providing parents with the "natural, essential and inalienable right[ ]" "to direct and control the upbringing, education, values, and discipline of their children." The text of the Initiative is attached as APPENDIX A. The title, ballot title and submission clause, and summary prepared by the Board are attached as APPENDIX B.
The petitioners assert that: (1) the Board failed to follow the procedures set forth in section 1-40-106(1), 1B C.R.S. (1995 Supp.), and, accordingly, lacked jurisdiction to hold hearings on the Initiative; (2) the Initiative violates article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.), because it contains multiple unrelated purposes in a single measure; (3) the title, ballot title and submission clause, and summary do not express the true intent and meaning of the Initiative and are inadequate to inform voters of the purpose and effect of the measure; and (4) the summary does not include an adequate fiscal impact statement as required by section 1-40-106(3)(a), 1B C.R.S. (1995 Supp.). We approve the Board.

I
On November 2, 1995, the Legislative Council[1] held a hearing on the Initiative to ascertain the proponents' intent and objective in proposing the amendment. The proponents of the Initiative responded to questions addressing the impact of the amendment on existing state laws governing children. On November 15, 1995, pursuant to section 1-40-106(1),[2] the Board held a hearing and fixed a title, ballot title and submission clause, and summary for the Initiative.
On November 21, 1995, the petitioners filed a motion for rehearing, contending that the Board's action should be set aside because: (1) the Initiative violated the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution and section *1130 1-40-106.5; (2) the title, ballot title and submission clause, and summary fail to fairly and accurately express the true intent and meaning of the initiative; (3) the title, ballot title and submission clause, and summary as fixed by the board "make[ ] it virtually certain that voters would be surprised by the widespread changes that the measure would work on [existing statutes and procedures];" and (4) the summary does not include a meaningful fiscal impact statement.[3]
On December 6, 1995, the petitioners; the proponents; and representatives from the Colorado Education Association, Rocky Mountain Planned Parenthood, the Colorado Coalition for the Protection of Children, and AMEND[4] appeared and presented arguments to the Board on their petition for rehearing. At the conclusion of the hearing, the Board denied the petitioners' motion for rehearing in its entirety.

II

A
Article V, section 1 of the Colorado Constitution reserves to registered electors the right to initiate constitutional amendments. Subsection 5.5 of that section requires that each initiative be limited to a single subject and provides in pertinent part:
No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.
Colo. Const. art. V, § 1(5.5); see § 1-40-106.5.
The single subject requirement prohibits the inclusion of "incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection," § 1-40-106.5(1)(e)(I), and is designed to protect the voters from surprise and fraud. § 1-40-106.5(1)(e)(II); see In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 32, 908 P.2d 125, 128 (Colo.1995) (hereafter Amend Tabor 32); In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25, 900 P.2d 121, 124-25 (Colo.1995) (hereafter Amend Tabor 25); In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995) (hereafter "Public Rights in Waters II"). The General Assembly intended that this section be "liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum." § 1-40-106.5(2).
The Board's duty is to designate and fix a title, ballot title and submission clause, and a summary for initiated petitions before these petitions are signed by electors. § 1-40-106(3), 1B C.R.S. (1995 Supp.). Section 1-40-106.5(3) directs the Board to "apply judicial decisions construing the constitutional single-subject requirement for bills and ... follow the same rules employed by the general assembly in considering titles for bills."
In order to violate the single-subject requirement, the text of the measure must "relate[ ] to more than one subject and [have] at least two distinct and separate purposes which are not dependent upon or connected with each other." In re Title, Ballot Title and Submission Clause, and Summary Regarding Petition Procedures, 900 P.2d 104, 109 (Colo.1995) (hereafter Petition Procedures); see "Public Rights in Waters II", 898 P.2d at 1078-79; People v. Sours, 31 Colo. 369, 405, 74 P. 167, 178 (1903). The *1131 single subject requirement is not violated if the "matters encompassed are necessarily or properly connected to each other rather than disconnected or incongruous." Amend Tabor 25, 900 P.2d at 125; see "Public Rights in Waters II", 898 P.2d at 1079.
In reviewing the Board's actions, "[w]e do not address the merits of proposed initiatives," nor "interpret the meaning of language contained in such proposals". In re Proposed Initiative Concerning "Automobile Insurance Coverage", 877 P.2d 853, 856 (Colo.1994). It is "beyond the scope of our review ... to interpret or construe the language of a proposed initiative." Id.

B
The petitioners contend that the Initiative violates the constitutional single-subject requirement because it establishes the parents' right of control of their children in four distinct areas: upbringing; education; values; and discipline. We disagree.
When reviewing an action of the Board, we must liberally construe the single-subject and title requirements to ensure that the rights of proponents are not unduly restricted. See § 1-40-106.5(2). Here, the single purpose of the Initiative is to establish as inalienable the rights of parents "to direct and control the upbringing, education, values, and discipline of their children." Because the Initiative relates to a single subject and does not encompass multiple unrelated matters, we conclude that it does not violate the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution or section 1-40-106.5. See Amend Tabor 32, 908 P.2d at 128-29 (holding that an initiative did not violate the single-subject requirement although it proposed a tax credit which would apply to six state or local taxes); "Public Rights in Waters II" 898 P.2d at 1079 (stating that, if the initiative tends to effect or carry out one general object or purpose, it encompasses a single subject).

III

A
The petitioners contend that the title, ballot title and submission clause, and summary do not fairly express the true intent and meaning of the Initiative. We do not agree.
The title and ballot title and submission clause must "correctly and fairly express the true intent and meaning" of the proposal and must "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1-40-106(3)(b); see In re Title, Ballot Title, and Submission Clause regarding Limited Gaming in Manitou Springs, Fairplay, and in Airports, 826 P.2d 1241, 1245 (Colo.1992). The summary must be "true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure." Section 1-40-106(3)(a). In reviewing the actions of the Board, we grant "great deference to the board's broad discretion in the exercise of its drafting authority." In re Proposed Initiative Concerning "State Personnel Sys.", 691 P.2d 1121, 1125 (Colo.1984) (hereafter "State Personnel Sys.").
We have held that, "[i]t is not the function of this court to rephrase the language of the summary and title in order to achieve the best possible statement of the intent of the amendment." In re Title, Ballot Title and Submission Clause, and Summary Pertaining to Mineral Production Tax Initiative, 644 P.2d 20, 25 (Colo.1982) (hereafter Mineral Production). So long as the "chosen language fairly summarizes the intent and meaning of the proposed amendment, without arguing for or against its adoption, it is sufficient." Id. We will revise the Board's action only when the language used by the Board is clearly misleading. "State Personnel Sys.", 691 P.2d at 1125.
In the present case, the title to the Initiative states that the amendment concerns parental rights, and then lists the four areas that are enumerated in the summary, whereas the summary states that the amendment concerns parental rights to "direct and control the manner in which their children are raised, including the children's upbringing, education, values, and discipline." (Emphasis added). Although the language of the summary could have been more precise, the chosen language fairly summarizes the intent *1132 and meaning of the proposed amendment. Mineral Production, 644 P.2d at 25.
The title, ballot title and submission clause, and summary clearly identify that the central feature of the Initiative is to provide parents with a constitutional right to direct and control their children. The petitioners concede that the title, ballot title and submission clause, and summary essentially repeat the text of the Initiative. However, they argue that the title, ballot title and submission clause, and summary fail to inform the public of the Initiative's true intent and meaning because the voters will not know that the Initiative may be in conflict with existing state laws governing children.
The Board is not required to "state the effect that an initiative may have on other constitutional provisions." In re Title, Ballot Title and Submission Clause Concerning Limited Gaming in Antonito, 873 P.2d 733, 740 (Colo.1994) (hereafter Limited Gaming in Antonito); see In re Title, Ballot Title and Submission Clause, and Summary Pertaining to Tax Reform, 797 P.2d 1283, 1288-89 (Colo.1990) (hereafter Tax Reform). The summary is "not intended to fully educate people on all aspects of the proposed law" and is not required to "set out in detail every aspect of the initiative." Tax Reform, 797 P.2d at 1289.
Because the title, ballot title and submission clause, and summary fairly and accurately describe the intent and meaning of the Initiative, we reject the petitioners' contention.

B
The petitioners also claim that the summary fails to include an adequate fiscal impact statement as required by section 1-40-106(3)(a). We do not agree.
Section 1-40-106(3)(a) provides that, if the board determines that the proposed initiative "will have a fiscal impact on the state or any of its political subdivisions," "the summary shall include an estimate of any such fiscal impact, together with an explanation thereof." Id.
The fiscal impact statement contained in the summary of the Initiative states that, "[b]ecause the simplicity of the measure raises a question as to the scope of its interpretation, the fiscal impact of the measure is indeterminate." The Board's statement of the fiscal impact is adequate.
The Office of State Planning and Budgeting and the Department of Local Affairs must provide fiscal impact information to the Board upon request. § 1-40-106(3)(a). In the present case, both the Office of State Planning and Budgeting and the Department of Local Affairs made comments and provided the required analysis to the Board. After review, the Board adopted the language of the Department of Local affairs and concluded that the fiscal impact of the Initiative was indeterminate. When the fiscal impact of a measure cannot be determined due to variables or uncertainties involved, "a separate explanation of fiscal impact is not required." Limited Gaming in Antonito, 873 P.2d at 742-43; see Tax Reform, 797 P.2d at 1291. Here, the fiscal impact statement reflects the Board's conclusion that the financial impact of the amendment is indeterminate, and, accordingly, the petitioners' contention that the fiscal impact statement is inadequate and misleading lacks merit.

IV
For the foregoing reasons, we approve the action of the Board.
MULLARKEY, J., concurs in part and dissents in part.
KIRSHBAUM, J., dissents.
SCOTT, J., does not participate.

APPENDIX A
Be it Enacted by the People of the State of Colorado:
Article II,section 3 of the Colorado constitution is amended to read:
(3) Inalienable rights. All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and *1133 protecting property; of seeking and obtaining their safety and happiness; AND OF PARENTS TO DIRECT AND CONTROL THE UPBRINGING, EDUCATION, VALUES, AND DISCIPLINE OF THEIR CHILDREN.

APPENDIX B

Proposed Initiative on "Parental Rights"
The title as designated and fixed by the Board is as follows:
AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PARENTAL RIGHTS, AND, IN CONNECTION THEREWITH, SPECIFYING THAT PARENTS HAVE THE RIGHT TO DIRECT AND CONTROL THE UPBRINGING, EDUCATION, VALUES, AND DISCIPLINE OF THEIR CHILDREN.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PARENTAL RIGHTS, AND, IN CONNECTION THEREWITH, SPECIFYING THAT PARENTS HAVE THE RIGHT TO DIRECT AND CONTROL THE UPBRINGING, EDUCATION, VALUES, AND DISCIPLINE OF THEIR CHILDREN?
The summary prepared by the Board is as follows:
The measure would grant constitutional status to parents' rights to direct and control the manner in which their children are raised, including the children's upbringing, education, values, and discipline.
Because the simplicity of the measure raises a question as to the scope of its interpretation, the fiscal impact of the measure is indeterminate.
Justice MULLARKEY concurring in part and dissenting in part.
I concur in Part II of the majority's opinion that the proposed initiative constitutional amendment designated as "Parental Rights" (the Initiative) does not violate the single-subject requirement mandated by article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.). I write separately to express my views on the method we should use to determine whether the single-subject requirement has been violated.
Although I agree with the majority's approval of the title setting board's (the Board) actions in fixing the title, ballot title and submission clause, and summary of the Initiative, I disagree with the majority's conclusion regarding the adequacy of the fiscal impact statement contained in the summary. Accordingly, I respectfully dissent from Part III(B) of the majority's opinion.

I.
In numerous cases, we have recognized that our function at this stage of the ballot process does not include interpreting a proposed amendment before it has been submitted to the electorate. "We do not address the merits of proposed initiatives, interpret the meaning of language contained in such proposals, or suggest how initiatives will be applied if ultimately adopted by the electorate." In re Proposed Initiative Concerning "Automobile Insurance Coverage", 877 P.2d 853, 856 (Colo.1994); see also In re Constitutional Amendment Concerning the "Fair Treatment of Injured Workers Amendment", 873 P.2d 718, 719 (Colo.1994); In re Proposed Election Reform Amendment, 852 P.2d 28, 31-32 (Colo.1993). Thus, we have said repeatedly that we do not construe the language of the proposed initiative at a pre-election phase. In re Proposed Initiative Concerning "Automobile Insurance Coverage", 877 P.2d at 856.
This body of case law, however, was developed in response to challenges waged by the opponents and/or proponents of proposed initiatives to the Board's actions of setting a title, ballot title and submission clause, and summary. We have not examined its continuing validity in light of the single-subject requirement for initiatives which was adopted by the voters in the 1994 general election. Colo. Const. Art. V, § 1(5.5).[1] In *1134 my view, this new single-subject requirement for initiatives is at odds with our prior precedents which strictly preclude us from interpreting the proposed amendment at a pre-election phase. Acknowledging this tension, I would hold that a limited degree of construction or interpretation is necessary and appropriate to address a single-subject challenge to a proposed initiative because the constitution, as amended in 1994, prohibits the Board from setting a title for a proposed initiative which violates the single-subject requirement. Colo. Const. Art. V, § 1(5.5); § 1-40-106(1)(a), 1B C.R.S. (1995 Supp.).

II.
The single subject requirement is aimed, in part, at eradicating the practice of "Christmas Treeing" or "log-rolling," i.e., the combining of two or more subjects in one proposed initiative in order to garner additional overall support for the amendment. See § 1-40-106.5(1)(e)(I), 1B C.R.S. (1995 Supp.); In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1079 (Colo.1995).
The history of the single-subject requirement shows that it was targeted at initiatives such as Amendments 1 and 6 of the 1992 general election. See Legislative Council of the State of Colorado General Assembly, Research Pub. No. 392, An Analysis of 1994 Ballot Proposals 2-3 (1994). Both were very detailed provisions containing material of a statutory nature. Amendment 1, which was enacted as article X, section 20 of the Colorado Constitution, includes, among others, election provisions, limitations on governmental revenue, spending and debt, and substantive tax provisions. Amendment 6, which was not adopted, would have increased state taxes for education and enacted specific educational reforms. There is nothing in the history of the single-subject requirement which suggests an intent to foreclose the adoption of broad statements of constitutional principles such as the proposal now before us.
To determine whether the single-subject requirement has been abrogated, we must determine if "the text of the measure relates to more than one subject and has at least two distinct and separate purposes which are not dependent upon or connected with each other." In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 25, 900 P.2d 121, 125 (Colo. 1995); see also In re Proposed Initiative "Public Rights in Waters II", 898 P.2d at 1078-79. We also have recognized that if the proposed initiative encompasses one purpose, then it comprises one subject under law and the initiative does not run afoul of the single-subject requirement. See In re Proposed Initiative "Public Rights in Waters II", 898 P.2d at 1079.
We cannot apply this analysis, however, without some preliminary interpretation of the proposed initiative. An evaluation of whether the component parts of a proposed initiative are connected and are germane to one another, so as to comprise one subject, simply cannot be undertaken in a vacuum. Courts in other states which have both the right of initiative and the single-subject requirement have recognized that some degree of construction or interpretation is required in the pre-election phase.
For example, in Slayton v. Shumway, 166 Ariz. 87, 800 P.2d 590 (1990), the Arizona Supreme Court acknowledged that in order to effectuate its version of the single-subject *1135 requirement and to determine whether the provisions of a proposed amendment pertained to the same subject, it had to undertake some interpretation of the proposed initiative. Id., 800 P.2d at 594. The Arizona Supreme Court upheld the proposed initiative, a victim bill of rights, in the face of a single-subject attack. It explained that if the proposed initiative was subject to a broad construction which would violate the single-subject requirement and a narrow construction, which would not, it "should choose that [construction] which avoids constitutional difficulty" thereby avoiding a finding of a single-subject violation. Id. at 595. The Arizona Supreme Court's position accords with our General Assembly's mandate that the single-subject requirement "be liberally construed, so as to avert the practices against which [it is] aimed and, at the same time, to preserve and protect the right of initiative and referendum." § 1-40-106.5(2), 1B C.R.S. (1995 Supp.).
In Missourians to Protect the Initiative Process v. Blunt, 799 S.W.2d 824 (Mo.1990), the Missouri Supreme Court considered whether a proposed initiative, which would reorganize the legislature and impose ethical restrictions on the legislative and executive branches, violated the single-subject requirement. While recognizing that courts are "understandably reluctant to become involved in pre-election debates over initiative proposals," the Missouri Supreme Court held that pre-election review was necessary to determine whether the single-subject condition precedent had been met. Id. at 827-28. In considering whether the proposed initiative violated the single-subject requirement, the court explained that:
The fact that a single initiative petition amending one article has the effect of amending more than one article of the constitution does not render the proposal per se in violation of the multiple subject prohibition; however, a proposal having such effect is suspect. When a proposal deals with matters that were previously the subject of an article other than the one being amended, the Court must scrutinize the proposal to see if all matters included relate to a readily identifiable and reasonably narrow central purpose.
Id. at 831.
The court then disqualified the proposed amendment for failing to comply with the single-subject requirement because it could discern no readily identifiable and reasonably narrow central purpose. In its analysis, the court commented on the fact that excessively broad general headings would render the single-subject requirement meaningless. Id. at 832.
In In re Advisory Opinion to the Attorney General, EnglishThe Official Language of Florida, 520 So.2d 11 (Fla.1988), the Florida Supreme Court considered whether a proposed amendment to declare English as the official language of Florida was so broad as to violate the single-subject requirement of Florida's constitution. The Florida court's construction of that state's single-subject requirement is similar to ours and holds that "[t]o comply with the one subject limitation, the proposed amendment must have a logical and natural oneness of purpose." Id. at 12 (internal quotation marks and citation omitted). The opponents of the Official English amendment argued that the proposed initiative would affect parts of the Florida constitution in addition to the particular article that would be amended. The opponents suggested that "legislation might be passed to implement the amendment which could, for example, abridge the freedom of speech or the press, violate due process or invade the right of privacy." Id. Nevertheless, the Florida Supreme Court held that the proposed amendment did not violate the one-subject requirement. In doing so, it noted that, while the initiative empowered the legislature to enforce the amendment,
[t]he difficulty with [the opponents'] arguments is that there has been no such legislation.... Moreover, it would be premature to speculate how the amendment might interact with other portions of the constitution as applied to a given factual situation. It may be that, if passed, the amendment could have broad ramifications. Yet, on its face, it deals with only one subject. *1136 Id. at 12-13. Although the Florida Supreme Court found that the proposed amendment pertained to only one subject on its face, the court acknowledged that the ramifications of the proposed initiative might be far reaching.

III.
Drawing on the experience of other states, I would formulate a pre-election single-subject review which recognizes the need for this court to engage in construction and interpretation of the proposed initiative to a limited degree. Like the Supreme Court of Missouri, I agree that if a proposed amendment amends more than one part of the constitution, it should be subject initially to more rigorous scrutiny. See Missourians to Protect the Initiative Process, 799 S.W.2d 824. That scrutiny entails finding whether the component parts of the amendment are so diverse and unrelated that no meaningful single-subject can be discerned. If, on the other hand, limited pre-election review culminates in a finding that the proposed amendment is one organic whole, with a singular purpose and singular subject under law, the proposed initiative should pass muster under the single-subject requirement regardless of whether the ramifications of the amendment may have potentially far-reaching effects. See In re EnglishThe Official Language of Florida, 520 So.2d 11. Thus, a pre-election limited review for single-subject deficiencies would not have the unwarranted effect of prematurely ruling on the merits of the proposed initiative and curtailing the power of initiative and referendum.
In the case now before us, it is apparent that the majority has interpreted the Initiative in order to conclude that the overarching and unifying theme of the Initiative "is to establish as inalienable the rights of parents `to direct and control the upbringing, education, values, and discipline of their children.' " Maj. op. at 1131 (quoting the Initiative). Without some interpretation or construction, the Initiative facially violates the single-subject requirement because it explicitly sets forth four separate areas that would be covered by the amendment: upbringing, education, values, and discipline. Connections between these four areas can be made only if the context of the whole amendment and its purpose is understood. This court can obtain that measure of understanding only through substantive interpretation.
If we were strictly limited to a facial analysis, then all general declarations of constitutional principles would be found to be in violation of the single-subject requirement. Thus, an amendment such as the equal rights amendment, Colo. Const., art II, § 29, could not be proposed as an initiative or a referred constitutional amendment because it potentially affects many parts of the constitution and laws. This would be an unintended, undesirable consequence of the single-subject requirement which has no support in that amendment's history. By adopting the single-subject requirement, voters did not give up their ability to adopt such constitutional principles through the initiative process.
Here, I agree with the Board that the unifying theme of the Initiative is parental rights. The fact that the proposed initiative lists four distinctive areas that are encompassed by the Initiative is not a per se violation of the single-subject requirement. All are aspects of parental rights. If adopted, the Initiative must continue to meet the single-subject requirement and any subject of the Initiative which is not expressed in the title is void. Colo. Const. Art. V, § 1(5.5). At this juncture, it is neither appropriate nor possible for this court to attempt to predict all of the effects of such an amendment.

IV.
Section 1-40-106(3)(a), 1B C.R.S. (1995 Supp.), mandates that, if the Board determines a measure will have a fiscal impact, the summary must "include an estimate of any such fiscal impact, together with an explanation thereof." The fiscal impact statement is subject to the same requirements that apply to the summary. See In re Title, Ballot Title and Submission Clause, and Summary Regarding Amend Tabor 32, 908 P.2d 125, 132 (Colo.1995) (Mullarkey, J., concurring in part & dissenting in part) ("As an integral part of the summary of those initiatives requiring it, the fiscal impact statement is subject to the same standards as the summary."). Thus, the Board must present the fiscal impact *1137 statement in a clear, fair, and neutral manner, id., so that the electorate is appropriately informed of the measure's fiscal impact, In re Title, Ballot Title and Submission Clause, and Summary Concerning Limited Gaming in the City of Antonito, 873 P.2d 733, 742 (Colo.1994).
In the event that the Board cannot ascertain the fiscal impact of the measure, it is not required to include one in the summary. See In re Title, Ballot Title and Submission Clause, and Summary Pertaining to Tax Reform, 797 P.2d 1283, 1291 (Colo.1990). Alternatively, the Board can state that the fiscal impact of the measure is indeterminate without further explanation. Id.; see also In re Title, Ballot Title and Submission Clause, and Summary Pertaining to Casino Gaming Initiative, 649 P.2d 303, 307 (Colo.1982)
Here, the Board found the fiscal impact of the Initiative to be indeterminate. However, in its characterization of the Initiative's fiscal impact, the Board abrogated its duty to provide a neutral summary which will not mislead the electorate. Specifically, the Board portrayed the fiscal impact of the Initiative as follows:
Because the simplicity of the measure raises a question as to the scope of its interpretation, the fiscal impact of the measure is indeterminate.
I disagree with the Board's characterization that the "simplicity" of the Initiative is what renders the fiscal impact indeterminate. The Initiative is not simple; it seeks to amend article II, section 3 of the Colorado Constitution which sets out "inalienable rights." An "inalienable right" is a complex philosophical and legal concept layered with meaning and open to interpretation. Because the Initiative does not specifically set forth a litany of what it will accomplish if passed, the Initiative's unknown potential applications render its fiscal impact difficult to ascertain. Hence, the Initiative's fiscal impact is indeterminate not because of its "simplicity" but, rather, because of its "brevity." The Board was careless in its choice of language and violated its duty to present a neutral assessment of the Initiative's fiscal impact. The phrase in question should be stricken.

V.
For the foregoing reasons, I concur in Part II of the majority's opinion and I respectfully dissent from Part III(B) of the majority's opinion.
Justice KIRSHBAUM dissenting.
The majority determines in part II of its opinion that the proposed "Ballot Initiative on Parental Rights" (the Initiative) does not violate the single-subject requirement of article V, section 1(5.5) of the Colorado Constitution and section 1-40-106.5, 1B C.R.S. (1995 Supp.), because its provisions pertain to the "single purpose or connecting factor" of the "general relationship of parent and child." Maj. op. at 1131.[1] I conclude that the concept of the general relationship between parents and children is far too general in scope to constitute a satisfactory thread of commonality among the four broad subjects of education, values, upbringing and discipline encompassed by the Initiative. Furthermore, in my view even that extremely general concept does not adequately describe several of the discrete subjects of the Initiative. I therefore respectfully dissent from the majority opinion.
Article V, section 1 of the Colorado Constitution reserves to registered electors of the State of Colorado the right to initiate constitutional amendments. Article V, section 1(5.5) of the Colorado Constitution contains the following pertinent provisions with respect to the content of proposed measures:
(5.5) No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; *1138 but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls....
Colo. Const. art. V, § 1(5.5). In 1994, the General Assembly enacted section 1-40-106.5, 1B C.R.S. (1995 Supp.), to implement the single-subject requirement. Section 1-40-106.5 contains the following pertinent provisions:
Single-subject requirements for initiated measures and referred constitutional amendmentslegislative declaration. (1) The general assembly hereby finds, determines, and declares that:
(a) Section 1(5.5) of article V and section 2(3) of article XIX of the state constitution require that every constitutional amendment or law proposed by initiative and every constitutional amendment proposed by the general assembly be limited to a single subject, which shall be clearly expressed in its title.
....
(e) The practices intended by the general assembly to be inhibited by section 1(5.5) of article V and section 2(3) of article XIX are as follows:
(I) To forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits;
(II) To prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.
(2) It is the intent of the general assembly that section 1(5.5) of article V and section 2(3) of article XIX be liberally construed, so as to avert the practices against which they are aimed and, at the same time, to preserve and protect the right of initiative and referendum.
§ 1-40-106.5(1)(a), (1)(e), (2), 1B C.R.S. (1995 Supp.). The statutory single-subject requirement is designed to protect voters against fraud and surprise and to eliminate the practice of combining several unrelated subjects in a single measure for the purpose of enlisting support from advocates of each subject and thus securing the enactment of measures which might not otherwise be approved by voters on the basis of the merits of those discrete subjects. In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995) (In re "Public Rights in Waters II"); In re Proposed Initiative on Sch. Pilot Program, 874 P.2d 1066, 1069 (Colo.1994). While the single-subject requirement must be fairly interpreted so as to protect the rights of initiative and referendum, the standard must be "liberally construed" in order to effectuate its purpose of protecting voters from surprise and fraud. § 1-40-106.5(2), 1B C.R.S. (1995 Supp.); see In re Proposed Petition for an Amendment to the Constitution of the State of Colorado adding Subsection (10) to Section 20 of Article X (Amend Tabor 25), 900 P.2d 121, 125 (Colo.1995) (In re Tabor 25).
A proposed measure impermissibly encompasses more than one subject if its text relates to more than one subject and if the measure has at least two distinct and separate purposes which are not dependent upon or connected with each other. In re "Public Rights in Waters II", 898 P.2d at 1078. A measure violates the single-subject requirement if it contains disconnected or incongruous matters. In re Tabor 25, 900 P.2d at 125.
We have also determined that initiatives containing diverse subjects cannot satisfy the single-subject requirement if those diverse subjects are connected only by a broad concept that has the potential of misleading voters because it tends to obscure significantly *1139 different subjects.[2] For example, in In re Tabor 25, we concluded that a measure which combined, inter alia, a tax credit with procedural requirements for future ballot titles violated the single-subject standard. In re Tabor 25, 900 P.2d at 125. The proponents of the measure argued that the measure's provisions were unified by the common characteristic of "government revenue changes." Id. We rejected this argument, determining that the tax credit procedures and the ballot title procedures were not dependent on each other and that the common characteristic of revenue changes could not "in reality, make the nature of the Initiative such that it constitutes a single subject." Id. at 125-26.
Similarly, in In re "Public Rights in Waters II", we held that a measure which combined provisions related to water conservancy and water conservation district elections with provisions mandating the adoption of a "strong public trust doctrine" to recognize and protect public ownership of water violated the single-subject requirement. In re "Public Rights in Waters II", 898 P.2d at 1080. We rejected the proponents' argument that the various provisions of the Initiative all involved the common characteristic of "water" on the grounds that such characteristic was "too general and too broad to constitute a single subject...." Id.
Although in a general sense the subjects of upbringing, education, values and discipline relate to relationships between parents and children, because each of those subjects itself encompasses varied subconcepts voters considering the measure could not reasonably be expected to understand the scope of their vote to endorse the Initiative. See § 1-40-106.5(1)(e)(I), 1B C.R.S. (1995 Supp.). By a "yes" vote, a voter could inadvertently endorse widespread reform in four distinct areas of law. For example, the concept of "values" may govern matters as diverse as constitutional rights, civil liability, criminal responsibility, and conduct governed by the Children's Code. The broad concept of "the general relationship of parent and child" does not adequately address the sharply divergent subjects and subsubjects addressed by the Initiative.
In In re House Bill No. 1353, 738 P.2d 371, 373 (Colo.1987), we determined that various sections of House Bill No. 1353 related to numerous and diverse subjects and therefore violated the constitutional single-subject requirement for bills. The bill in question attempted, inter alia, to combine the imposition of a requirement that prisoners be charged for medical visits with the repeal of a statute entitling persons receiving pensions to receive additional payments during the winter in order to defray heating expenses. In re House Bill No. 1353, 738 P.2d at 373. Supporters of the measure argued that the provisions of the bill pertained to the single subject of "monetary impact." Id. We rejected this argument and concluded that the numerous purposes of the bill implicated a "significance that transcend[s] the common characteristic of financial impact." Id.
It is true, as the proponents urge, that upbringing, educating, transmitting values and disciplining children are important responsibilities of parents. However, the broad subjects of child discipline and child education are significantly distinct. A proposed initiative authorizing parental corporal punishment of children aged five and six by means of paddles and requiring all children aged five and six to receive at-home or equivalent training in the use of computers would surely violate the constitutional single-subject requirement.
The Initiative is distinguishable from the measure we upheld in In re Proposed Petition for an Amendment to the Constitution of the State of Colorado Adding Section 2 to Article VII (Petitions), 907 P.2d 586 (Colo. 1995). In that case, we determined that the proposed measure did not violate the single-subject requirement because each of the numerous provisions thereof were necessarily and properly connected to the single, if quite general, purpose of reforming petition rights and procedures. Id. at 591. Voters would clearly understand that the proposal pertained only to petitions and would affect only *1140 petitions. The subject of "petitions" is clearly defined, and the provisions of the proposed measure were subcategories of the broader heading of petition rights and procedures. In contrast, the Initiative seeks to combine four vague conceptsupbringing, education, values and disciplineinto one measure. Each of these four concepts encompasses a multitude of subjects in itself. I cannot agree with the majority's determination that these four distinct broad subjects are in some fashion sufficiently interconnected by the general concept of the general relationship of parent and child so as to satisfy the single-subject requirement of section 1-40-106.5.
For the foregoing reasons, I respectfully dissent from the majority opinion.
NOTES
[1] The Legislative Council is part of the Office of Legislative Legal Services and has a duty to "examine the effects of constitutional provisions and statutes and recommend desirable alterations." § 2-3-303(1)(b), 1B C.R.S. (1995 Supp.).
[2] Section 1-40-106(1) provides in pertinent part: For ballot issues, ..., the secretary of state shall convene a title board consisting of the secretary of state, the attorney general, and the director of the office of legislative legal services or the director's designee. The title board, by majority vote, shall proceed to designate and fix a proper fair title for each proposed law or constitutional amendment, together with a submission clause....
[3] In this original proceeding, the petitioners contend that the Board lacked jurisdiction to set title, ballot title and submission clause, and a summary because it held hearings on the Initiative outside the time frame mandated by section 1-40-106(1). However, the petitioners failed to raise this contention in their motion for rehearing, and, accordingly, we refuse to address the issue here.
[4] AMEND is an organization that provides counseling to abusive men in domestic violence situations.
[1] The text of article V, section 1(5.5) reads as follows:

No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls. In such circumstances, however, the measure may be revised and resubmitted for the fixing of a proper title without the necessity of review and comment on the revised measure in accordance with subsection (5) of this section, unless the revisions involve more than the elimination of provisions to achieve a single subject, or unless the official or officials responsible for the fixing of a title determine that the revisions are so substantial that such review and comment is in the public interest. The revision and resubmission of a measure in accordance with this subsection (5.5) shall not operate to alter or extend any filing deadline applicable to the measure.
[1] The majority's determination that the Initiative pertains to the single subject of the "general relationship of parent and child" does not reflect the positions of the parties. The proponents contend that the Initiative pertains to the "single subject of Parental Rights." Respondents' Brief at 11. The opponents argue that the phrase "parental rights" is inadequate to link the various provisions of the Initiative. Petitioners' Brief at 13. The Initiative Title Setting Review Board has referred to the Initiative as a proposal concerning "parental rights," not "the general relationship of parent and child."
[2] The General Assembly has provided that in setting titles the Initiative Title Setting Review Board should apply judicial decisions construing the constitutional single-subject requirement for bills. § 1-40-106.5(3), 1B C.R.S. (1995 Supp.).